**Cathryn C. JONES, Appellant,**

v.

**Janet S. MILLER, Appellee.**

**No. 6169.**

District of Columbia Court of Appeals.

Argued March 6, 1972.

Decided May 12, 1972.

R. Kenneth Mundy, Washington, D. C., for appellant.

Paul H. Weinstein, Washington, D. C., for appellee. M. Michael Cramer and Laurence Levitan, Washington, D. C., also entered appearances for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

PAIR, Associate Judge:

This appeal is from a judgment entered in a personal injury action arising out of a collision by an automobile operated by appellee with the rear of an automobile operated by appellant. The trial was to a jury which resolved questions of liability in favor of appellant and returned a verdict of $2,500 which included special damages in the total amount of $640.50.

Appellee moved for judgment n. o. v. or, in the alternative, for a new trial. Upon consideration of the motion, the trial court refused to disturb the verdict respecting the issue of liability [1] but being of the opinion that the damages awarded were "grossly excessive," ordered a remittitur of $1,-859.50 or, in the alternative, a new trial on the issue of damages. Appellant refused to remit as directed and, after disposition of appellant's motion for reconsideration, the court ordered a new trial on the issue of damages only.

Thereafter the court, at the request of the parties and without prejudice to any right of appeal, entered on September 15, 1971, a judgment for appellant in the amount of $640.50 representing the exact amount of special damages established by the evidence. This appeal followed.

Influencing the trial court in its disposition of the motion for judgment n. o. v. and its subsequent entry of the judgment were the considerations reflected in its decision

---

1. Appellee's liability is not challenged on this appeal.

and order entered July 8, 1970, which in pertinent part reads:

> As the special damages claimed by [appellant] did not exceed $640.50, at least $1859.50 of the jury verdict in the amount of $2500.00 is allocable as compensation for the past pain claimed to have been suffered . . . . [T]he law infers past pain and suffering from personal injury and therefore direct proof of the pain and suffering is not necessary to entitle one to recover actual damages . . . when personal injury is shown . . . . In the case at bar, however, where [appellant] had incurred certain medical expenses . . . mostly for diagnostic purposes but offered no medical testimony . . . no physical injury was sufficiently shown as to warrant the inference of any resulting pain. (Citations omitted.)

The trial court reasoned from all of this "that to the extent that the jury's verdict is unquestionably allocable to compensation for past pain it is unwarranted by the evidence, and to that extent, grossly excessive."

Urging reversal, appellant contends that the trial court erred when it ordered a remittitur of $1,859.50 representing the difference between the $2,500 verdict and the sum total of the special damages claimed ($640.50).[2]

Appellee urging affirmance contends that because no objective physical injury was shown by the evidence, proximate cause between any subjective symptoms of physical injury and appellee's negligent operation of her automobile could be established only by aid of expert medical testimony.

The question presented, therefore, is whether there is in the record a demonstration of physical injury sufficient to support an inference that appellant experienced pain and suffering as a consequence of appellee's negligence. We think that there is and, accordingly, we reverse.

What stands uncontroverted in the record is that some fifteen or twenty minutes after the rear end collision, appellant began to experience numbness, discomfort and pain in the area of her back near the left shoulder. She then went to the Washington Hospital Center where X-rays were made of her neck and left shoulder,[3] after which she was directed to consult her private physician.

Approximately two weeks later, appellant consulted Dr. Morton Rose who also X-rayed her shoulder and "put the heat on the neck and shoulder and the needle in the neck and shoulder." She saw Dr. Rose altogether four or five times and he gave her treatments consisting of heat packs and manipulations. He gave her also pills but at times she "would have to take things like bufferin and aspirin" and when she experienced severe pain—particularly on cold rainy days—she would go home because of pain in her "neck and deep in the shoulder." She stated that for a period of approximately three weeks, she was unable to use fully her left hand in her work.

■ In returning its verdict for $2,500 which included special damages (consisting of medical expenses, medicines and loss of wages), the jury necessarily found that appellee was negligent, that appellant was free from contributory negligence and that

| Washington Hospital Center | $ 43.00 |
|---|---|
| Dr. Morton Rose | 70.50 |
| Medicines and prescriptions | 17.00 |
| Loss of earnings | 405.00 |
| Transportation | 5.00 |
| Property damage | 100.00 |
| Total | $640.50 |

2. According to appellant's pre-trial statement adopted by the trial court and the evidence at the trial, the special damages claimed to have resulted from the accident were as follows:

3. There is no indication in the record as to what, if anything, was disclosed by the X-rays.

appellee was, for these reasons, liable for all damages which were the natural and probable consequence of her negligence. *See* and *compare* Gallentine v. Richardson, 248 Cal.App.2d 152, 154, 56 Cal.Rptr. 237, 239 (1967); Walser v. Vinge, 275 Minn. 230, 146 N.W.2d 537 (1966); Lehner v. Interstate Motor Lines, Inc., 70 N.J.Super. 215, 175 A.2d 474 (1961); Annot., 20 A.L. R.2d 276–78 (1951). Absent any showing to the contrary, the presumption must be that the jurors were properly instructed by the trial judge, that they were guided in their deliberations by such instructions, and that they were satisfied that appellant's testimony established a causal relationship between appellee's negligence and the injury, pain and suffering complained of.

█ Appellee urges that the medical expenses were incurred principally for diagnostic purposes, but it is difficult to understand how any diagnostic purpose was served by the treatments given appellant by Dr. Rose consisting of applications of heat to her neck and shoulder and manipulations thereof. Certainly, no such purpose was served when Dr. Rose gave her injections in her neck and shoulder, pills and a presciption for aches in her shoulder.

Appellee concedes,[4] and apparently the trial judge was of like view, that appellant was a competent witness, if not the only competent witness, to testify concerning her past pain and suffering.[5] There is therefore on the record direct evidence in the form of appellant's testimony which was sufficient, without expert medical testimony, (1) to establish that she sustained a physical injury, and (2) to support the award for her pain and suffering. *See* Sennott v. Seeber, 6 Wis.2d 590, 95 N.W.2d 269, 271 (1959).

█ It is true, of course, that expert medical testimony may be required in a personal injury action in which recovery is sought for permanent injuries or when in determining causation, complicated medical questions must be resolved. Thus in Wilhelm v. State Traffic Safety Comm'n, 230 Md. 91, 185 A.2d 715, 719 (1962), a personal injury action arising out of an automobile accident, the court approved the trial judge's instruction to the jury that, in the absence of any expert medical testimony "there was no legally sufficient evidence to show (a) that the wife's alleged 'psychiatric involvement, psychosomatic factors, or mental state,' or (b) that abdominal or back pains associated with her menses, were the result of the accident." [6] Significantly enough, however, the court distinguished those cases in which no complicated medical question is involved, saying at 719:

There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury re-

4. "The competence of a claimant to describe pain and suffering sustained is not being contested." [Appellee's brief at 7.]

5. It is competent for the plaintiff to testify himself as to his pain, how he suffered, the extent of his suffering, and its nature and intensity, as well as to his internal condition perceptible to his senses. . . . (Footnote omitted.) 22 Am.Jur.2d Damages § 309 (1965). The difficult cases are those in which there are no objective symptoms with which the existence of pain can be associated. In such a case there is ulti-

mately only one person in the world who knows whether the alleged pain exists and that is the plaintiff himself: Even the most skillful doctor or psychologist can not testify with complete certainty that the pain is or is not present. M. Plant, Damages for Pain and Suffering, in Damages In Personal Injury and Wrongful Death Cases 217, 221–22 (S. Schrieber ed. 1965).

6. *See also* and *compare* District of Columbia Government v. Adams, D.C.App., 262 A.2d 105 (1970).

lates to matters of common experience, knowledge, or observation of laymen. . . . (Citations omitted.)

■ Because of the close proximity in time between the collision and appellant's subjective symptoms of physical injury and the fact that some pain is a natural consequence of a physical injury, we hold that it was within the province of the jury to infer, without the aid of expert medical testimony, that appellant's pain and suffering were caused by appellee's negligence.

It follows, therefore, that the trial court erred as a matter of law when it held on this record that expert medical testimony was necessary to support the award of damages for pain and suffering.[7]

Reversed and remanded with directions to reinstate the $2500 verdict.

7. It is basic that in any personal injury action tried to a jury it is the peculiar function of the jury, guided of course by proper instructions from the court, to determine the amount of recoverable damages, if any. And only when the damages awarded are so excessive in view of all the evidence as to demonstrate that the jury permitted their passions to control their disposition, may the trial judge substitute his judgment. Preston v. Safeway Stores, Inc., D.C., 163 F.Supp. 749, aff'd, 106 U.S.App.D.C. 114, 269 F.2d 781 (1959) ; Hilleary v. Earle Restaurant, Inc., 109 F. Supp. 829, 838 (D.D.C.1952).