**Robert L. BALTIMORE, Appellant,**

v.

**B.F. GOODRICH COMPANY, Appellee.**

**No. 86–665.**

District of Columbia Court of Appeals.

Argued Sept. 29, 1987.
Decided June 30, 1988.

---

Alan C. Anderson for appellant.

Ronald G. Guziak, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant Baltimore suffered a fall caused by the negligence of appellee B.F. Goodrich Company ("Goodrich"). The issue on appeal is whether the trial court properly entered a judgment *non obstante veredicto* denying Baltimore $64,347.00 in damages. The jury awarded this amount for income lost as a result of Baltimore's disability retirement allegedly forced by the fall. The trial judge granted Goodrich's motion for judgment n.o.v. on this element of damages.[1] on the basis that Baltimore had failed to produce adequate expert testimony to support a jury finding that the accident was a substantial producing cause of Baltimore's subsequent retirement on disability. Baltimore contends that 1) no expert testimony was required in this case to support the jury's award of damages for lost income, and 2) even if expert testimony was required, he did in fact produce sufficient expert testimony at trial.[2] We disagree on both issues and hence affirm.

## I.

The accident occurred on October 12, 1978, at a service station operated by Goodrich. The negligent operation of a hydraulic lift at the station caused Baltimore, a computer operator in his early 60's, to fall to the ground from a height of five to six feet.[3] Baltimore was taken to the hospital where he was examined, x-rayed, and shortly released. The following day he was examined by his own cardiologist, Dr. David W. Williams, who concluded that Baltimore had cervical strain, multiple contusions, and an acute anxiety reaction resulting in the exacerbation of his existing hypertension. After a couple of weeks, Baltimore returned to work on a part time basis. His last day on the job was May 30, 1979. Baltimore took retirement on the basis of disability.[4]

Prior to the accident and up to the time of retirement, Baltimore suffered from numerous physical and psychological ailments. The trial judge in his written memorandum opinion and order granting the judgment n.o.v. ably encapsulated the situation:

[T]he evidence at trial showed the existence of many preexisting injuries and many medically complicated factors. Thus, for example, Mr. Baltimore was shown to have had a lumbar disc problem in 1957 as well as advanced degenerative osteo-arthritis, described by some physicians as "severe" or "marked." He also had a long-standing history of hypertension, hardening of the arteries, and progressive cardiovascular disease. These conditions produced a 1977 heart attack, for which he was hospitalized two weeks.

In addition, several expert witnesses described an array of personality disorders and difficulties, including severe chronic depression, anxiety, paranoid personality

---

1. The case was submitted to the jury in the form of a special verdict and compensatory damages were awarded as follows: (a) Income lost Up To Time of Trial *$64,347;* (b) Future Loss of Income *$____;* (c) All damages other than (a) and (b) *$10,653.* Goodrich does not challenge the finding of negligence or the denial of a judgment n.o.v. with respect to item (c) of the special verdict.

2. This was the third trial. The first trial ended in a mistrial during voir dire of the jury. At the second trial, a directed verdict on the ground of insufficient proof of negligence was reversed by this court. *Baltimore v. B.F. Goodrich Co.,* 490 A.2d 642 (D.C.1985).

3. The immediate facts surrounding the accident, not relevant to this appeal, are set forth in our opinion in the prior appeal. *See* note 2, *supra.*

4. In his lost income calculation, Baltimore asserted that absent the fall, he would have continued working until retirement at the age of 70 in January 1987. He sought as lost income the difference in his pay while employed and his retirement pay from July 1979 to January 1987.

with depressive features, manipulative behavior, and somatizing, *i.e.*, a tendency to translate tensions and emotional problems into physical symptoms. Apart from the accident, there were many sources of anxiety in Mr. Baltimore's life as of July 1979. One of the principal sources was a complaint he initiated almost ten years earlier alleging racial discrimination by his supervisors at work. After an adverse administrative decision on this matter, Baltimore filed a lawsuit in the United States District Court for the District of Columbia. That case was ultimately tried before Judge Gasch and resolved unfavorably to Baltimore. In January 1979, the same month in which he filed the instant lawsuit, Baltimore's appeal from Judge Gasch's decision was dismissed.

Moreover, at the time of his retirement, Baltimore was experiencing marital discord and acrimony. Married for the second time in 1975, he and his wife separated in June 1978. According to some of the experts, this separation caused Baltimore considerable stress, frustration, and anxiety.

In short Baltimore's situation was, in the apt words of one of his physicians, "multifactorial" and highly complicated.

## II.

 To prevent the jury from engaging in speculation, we have held that in the absence of expert testimony, a jury may not consider the causal connection between a defendant's negligence and a plaintiff's claimed disability unless:

(1) the disability first emerged coincidentally with or very soon after the negligent act, or

(2) the disability was of a type which by its very nature reflected its cause, or (3) the cause of the injury related to matters of common experience, knowledge, or observation of laymen.

*Early v. Wagner,* 391 A.2d 252, 254 (D.C. 1978) (citing *Jones v. Miller,* 290 A.2d 587, 590–91 (D.C.1972)). *See also District of Columbia v. Freeman,* 477 A.2d 713, 719 (D.C.1984). Thus, in cases presenting medically complicated questions due to multiple and/or preexisting causes, *see, e.g., Gray Line, Inc. v. Keaton,* 428 A.2d 360 (D.C.1981), or questions as to the permanence of an injury, *see, e.g., D.C. Transit Systems, Inc. v. Simpkins,* 367 A.2d 107 (D.C.1976), we have held that expert testimony is required on the issue of causation. In light of the complex nature of the disability claimed here, the multiple preexisting and concurrent possible causes, the length of time between the accident and Baltimore's retirement, this case falls within that category of "medically complicated" cases requiring expert testimony.[5] *Cf. Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 185 A.2d 715, 719 (1962) ("[A] question involving the causes of emotional disturbances in a person sufficient to evoke, subconsciously, grossly exaggerated symptoms is an intricate and complex one, peculiarly appropriate for science to answer. To allow a jury of laymen, unskilled in medical science, to attempt to answer such a question would permit the rankest kind of guesswork, speculation and conjecture.")

 To recover for post-retirement lost income in the present case, then, Baltimore was required to present expert testimony establishing, to a reasonable degree

---

**5.** The pain and suffering and other immediate consequences of a fall such as the one involved here are within the knowledge and experience of the average juror, *see Garner v. Sam S. Bevard & Sons,* 342 A.2d 52 (D.C.1975), and therefore do not require expert testimony. For this reason, the trial court did not grant a judgment n.o.v. with respect to that portion of the damages awarded under category (c) of the special verdict. *See* note 1, *supra.* Appellant urges that because the loss of income prior to his retirement due to his inability to return to work immediately after the accident also falls within the type of damages not requiring expert testimony, *Garner, supra,* he is entitled to at least that portion of his lost income. However, appellant never requested such damages at trial, and never objected to the form of the special verdict submitted to the jury. He will not be heard to do so for the first time on appeal.

of medical certainty,[6] that the accident in question "played a substantial part in bringing about" the condition existing at the time of his retirement. *District of Columbia v. Freeman, supra,* 477 A.2d at 715–16; *Lacy v. District of Columbia,* 424 A.2d 317, 318–22 (D.C.1980). In determining whether Baltimore met this requirement, we must view the evidence and all reasonable inferences in the light most favorable to Baltimore. *Marcel Hair Goods Corp. v. National Sav. & Trust Co.,* 410 A.2d 1, 5 (D.C.1979).

### III.

Baltimore claimed that depression, anxiety and related pain necessitated his retirement, and that the accident caused this condition. This claim required testimony showing that 1) Baltimore in fact had a condition that rendered him incapable of working, and 2) the accident played a substantial part in bringing about that condition.[7] We conclude that while Baltimore may have succeeded in meeting the first requirement,[8] his expert testimony failed to satisfy the second.

Dr. Lester Turner, a clinical psychologist, was one of Baltimore's experts asserted as providing the necessary expert testimony linking the accident to appellant's condition at the time of his retirement. Turner first saw Baltimore three years after the accident for the purpose of making a psychological pain assessment. On direct examination, Turner testified as follows:

Q. Now let me just clarify, Doctor. You said that you think he was depressed before the accident?

A. Probably, yes.

Q. Well, can you give us an indication of the relationship between the depression before the accident and after?

A. Well, depression before the accident, I don't think, was anywhere near as severe. He was having job problems, he was having marital problems, he was having heart problems, he had an ulcer. I mean, all of these factors sort of fit together to give me the notion that the depression didn't just start with the accident. I think that the accident probably made it worse or compounded the depression, and my feeling was that it's unlikely that it was going to get much better.

Some people just sort of get caught up in a chronic depression, and it just—let's see. When I saw him, it was around three or four years from the accident.

---

**6.** The expert must be able to state an opinion "based on a reasonable degree of medical certainty, that the defendant's negligence is more likely than anything else to have been the cause (or a cause) of the plaintiff's injuries." *Psychiatric Institute of Washington v. Allen,* 509 A.2d 619, 624 (D.C.1986). *See also Clifford v. United States,* 532 A.2d 628, 640 n. 10 (D.C.1987) ("This standard of 'reasonable' medical certainty, reflects an objectively well founded conviction that the likelihood of one cause is greater than any other ..."). Any differences in nuance between these formulations of the standard and the questions posed to the expert witnesses should have been raised first at the trial level.

**7.** Baltimore's assertion is correct that a single expert need not testify as to the entire chain of causation, from accident to ultimate effect. This is particularly true, for example, in cases where different types of expertise are required to evaluate successive links in a chain of causation. So long as the inferences necessary to draw the links together are "within the realm of common knowledge and everyday experience," *District of Columbia v. White,* 442 A.2d 159, 164 (D.C.1982) (quoting *Matthews v. District of Columbia,* 387 A.2d 731, 734–35 (D.C.1978)), we would not deem a plaintiff's case insufficient by the mere fact that no single, all-knowing expert was able to testify as to the entire line of causation. Contrary to Baltimore's further argument, however, we do not think that lay inferences alone are sufficient to establish causation within each link, at least on the evidence before us.

**8.** In the following testimony, Dr. Richard Restak read from a report he had written shortly before Baltimore's retirement:

It's my opinion due to anxiety and depression this patient is unable to continue working his present work situation, should be retired on medical disability. I'd say he's 40 percent disabled. That's because of depression and anxiety, cause to be determined, to be worked out.

This expert testimony suffices to support a finding of the existence of a disabling condition of depression and anxiety at the time of retirement.

The depression was still severe. And considering his age, I felt the depression probably would pretty well stay around. While it could be reduced with medication, I just didn't feel it was going to go away.

Q. Now, I want to make sure I understand you, Doctor. So, are you saying that the accident had some effect on Mr. Baltimore's depression and, therefore, his pain?

A. Yes, that was my opinion.

Q. And is your opinion based on a reasonable degree of psychological certainty?

A. Yes.

Neither this nor other portions of Turner's testimony demonstrated that the accident had a substantial and lasting effect on appellant's condition. Baltimore's counsel asked Turner to affirm, to "a reasonable degree of psychological certainty," that the accident had "some effect" on appellant's depression. "Some effect," however, does not suffice. To impose liability on Goodrich, the accident must have had a substantial effect in bringing about the condition that necessitated appellant's retirement;[9] that is, not only must the accident have had a substantial effect on Baltimore at the time of the accident but that effect must have continued to a substantial degree up to the time of retirement. Even if the level of disability remained as a constant, other preexisting or intervening influences could have dissipated and replaced whatever ef-

fect the accident caused at the time of its occurrence.[10] In fact, when the trial judge asked Turner, "Do you have an opinion which you're prepared to state with a reasonable degree of scientific certainty that if this accident had never occurred Mr. Baltimore would have been able to continue working right along in his existing job until the normal retirement age of 70,[11] or is that simply too speculative to project?", Turner responded, "I couldn't even guess. I just don't know. Don't know."

Baltimore also invokes to several statements made by Dr. David E. Williams, a specialist in internal medicine and cardiology who had been treating appellant for several months before the accident. Most of Williams' testimony, however, relates to the effect of the accident on Baltimore's preexisting hypertension. As to this, Williams did not state that the accident had any substantial or lasting effect. When questioned by the trial judge as to the effect of the accident on Baltimore's anxiety, Williams responded:

The problem that I have is not knowing the impact that this accident had on Mr. Baltimore's psyche overall. I can't— I'm unable to make that determination. And I don't know how disabling the event itself could have been for him. I know what exists as far as his medical— his heart condition is concerned, and I know the disability that exists from that standpoint. But I cannot with a degree of medical certainty make an opinion on his—the emotional trauma that this par-

9. "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility.... It is only where the evidence permits a reasonable finding that the defendant's conduct had some effect that the question whether the effect was substantial rather than negligible becomes important." RESTATEMENT (SECOND) OF TORTS § 431 comments b, c (1965). *See also id.* § 433.

10. Baltimore points to Dr. Turner's testimony relating the pain resulting from the accident to the pain, apparently psychologically caused by

Baltimore's type of personality, existing at the time of retirement. (People of this type were described as somatizers, those who involuntarily convert stress, anxiety, and anger into physical problems.) On this aspect too, the linkage was insufficient, e.g.:

Q. You related the majority of his pain, Doctor, not to this accident but to depression; did you not?

A. At the time I saw him, yes. But, the pain started with the accident.

11. *See* note 4, *supra.*

ticular event may have caused.[12]

Dr. Richard Restak, a specialist in neurology, also made some statements relating Baltimore's depression to the accident. Restak, however, did not testify that the accident was a substantial factor causing Baltimore's depression. He merely stated that the accident was one of "the factors that were involved." While Restak stated that the accident "exacerbated" Baltimore's preexisting depression anxiety, he could not say this with a reasonable degree of medical certainty, and did not say how substantial or permanent the exacerbation was.[13] This was the third trial.

Baltimore also points to the testimony of Dr. Calvin L. Griffin, a specialist in internal medicine and rheumatology. Griffin testified that the accident had some effect on Baltimore's preexisting arthritis, and that Baltimore "became quite depressed about his condition." This testimony is deficient in two respects. First, Griffin did not state to what extent the accident aggravated Baltimore's arthritis, or whether there was any permanence to such aggravation. Second, Griffin did not state whether this aggravation had any substantial, lasting effect on appellant's depression or anxiety condition. When questioned about the relation between Baltimore's disability and the accident, Griffin clearly stated: "Because of the length of time between the original occurrence and the time that I saw Mr. Baltimore, I cannot say that the pain and the disability that I saw Mr. Baltimore in in 1980 was directly a result of the incident of 1978."

Baltimore finally relies on the testimony of Dr. Rida N. Azer, a specialist in orthopedic surgery. Azer testified that the accident had aggravated Baltimore's arthritis, but did not say to what extent, and could not separate the aggravation caused by the

accident from that resulting from normal "wear and tear." Azer also testified that some of the soft tissue injuries suffered in the accident had not healed by the time of Baltimore's retirement (though he did say they had healed by January of 1980). However, Azer never stated that these injuries contributed substantially to the pain Baltimore was experiencing at the time of his retirement. He only testified that the pain Baltimore complained of in January of 1980 was "partly" related to the accident.

In sum, a review of the record convinces us that the trial court did not err in concluding that Baltimore had failed to produce the requisite expert testimony on the issue of causation. Accordingly, the judgment n.o.v. on appeal herein must be

*Affirmed.*

---

12. Shortly thereafter, when directly asked whether he could say that the accident was a substantial contributing factor toward Baltimore's retirement, Dr. Williams testified:

A. I would think that it has to be considered. I—But I'm—I'm not in a position to say—

Q. Well, let me just ask you this.
A. —the degree.

13. To the contrary, when asked in his opinion whether Baltimore's retirement was "in any way" caused by the accident, he answered "no."