Linda S. LEWIS, Appellee,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

No. 92–7186.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1994.

Decided April 1, 1994.

Gerard J. Stief, Washington, DC, argued the cause, for appellant. With him on the briefs were Robert L. Polk and Robert J. Kniaz, Washington, DC. Linda Lazarus, Washington, DC, entered an appearance.

Donald A. Clower, Washington, DC, argued the cause and filed the brief, for appellee.

Before: WALD, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

Opinion concurring in part and dissenting in part filed by Circuit Judge WALD.

RANDOLPH, Circuit Judge:

A jury returned a verdict against the Washington Metropolitan Area Transit Authority (WMATA), awarding Linda S. Lewis

$750,000 for damages arising out of WMATA's negligent maintenance of a bus. The district court, finding the verdict "clearly excessive," granted a remittitur to $300,000, which Lewis accepted. In this appeal, WMATA concedes negligence (the brakes on the bus were not maintained properly) but challenges the award of damages.

Lewis suffered injuries while riding in a Metrobus on August 24, 1989. The bus came to a sudden stop, throwing Lewis out of her seat in the rear of the bus. She tried to catch herself with both hands, but hit the floor on her back. When she attempted to get up, she felt a pain in her back, dropped to her knees and landed on her hand.

After the bus emptied, Lewis took another bus to the next stop, and then walked several blocks to work. Later that day she took time off to see a doctor. Lewis complained that her tailbone hurt, her shoulders were stiff and sore, her right arm "felt heavy," and her head hurt. After missing a few days, Lewis returned to work, but experienced difficulty performing her job as a receptionist because of the pain she felt while sitting.

Six days after the accident, on August 30, 1989, Lewis visited another doctor, Dr. Jeffrey Goltz, an orthopedist. She told Dr. Goltz that she had a stiff neck and shoulder; a swollen, aching, heavy right arm; pressure in the tailbone area; and swollen knees.

Lewis continued treatment with Dr. Goltz for about a year and also underwent physical therapy. Dr. Goltz diagnosed Lewis as having "acute neck strain, acute back strain," and "bilateral damage underneath her kneecap; I call that chondromalacia." Lewis's complaint about the right arm was "just discomfort." Dr. Goltz saw Lewis every few weeks during this year-long period. On December 13, 1989, he thought "her knees were no longer a problem." On March 12, 1990, he believed her "knees were doing well." On May 9, 1990, however, he noticed that the knees were bothering her again and on May 23, 1990, he concluded that "both knees ... still had problems." An MRI on June 6, 1990, showed "some chondromalacia." As to her other problems, on February 5, 1990, Dr.

Goltz "noticed she had a little cyst on her right wrist, which was unrelated to the injury, a ganglion."

Lewis left Dr. Goltz in August 1990. She was seen by Dr. Reyes, who referred her to Dr. C.C. Liu, an orthopedic surgeon. At that time, one year after the accident, Lewis considered her back, both knees and her right arm to be "the three most critical things." Dr. Liu prescribed a back and leg brace for her, and referred her to Dr. Norman Cowen, a hand and arm specialist, because Lewis was having problems with her arm. Lewis first saw Dr. Cowen on August 23, 1991. On December 5, 1991, Dr. Cowen performed arthroscopic surgery on Lewis's right wrist to correct a ligament rupture. Lewis also underwent therapy with Mary Sorenson, who worked in Dr. Cowen's office. Sorenson testified as a fact witness only and recounted Lewis's statement to her that she injured herself in a bus accident when she fell on her hand. Sorenson also described tests and treatments relating to Lewis's wrist.

Dr. Cowen referred Lewis to Dr. Rafael Lopez for her knee and back problems. Lewis first saw Dr. Lopez on January 7, 1992. At the time of trial (May 1992) Lewis was still being treated by him, and was undergoing physical therapy for these problems.

After a three day trial,[1] the jury returned a verdict for Lewis, indicating on the verdict form that WMATA was negligent in allowing the bus to operate; and that WMATA's negligence was the proximate cause of Lewis's injuries.

 WMATA wants us to set aside the $300,000 award to Lewis and to order a new trial on damages, mainly on the ground that no expert testimony established a causal connection between the accident and Lewis's knee and wrist injuries. District of Columbia law controls. *See* Section 80, Washington Metropolitan Area Transit Authority Compact, D.C.CODE ANN. § 1–2431 (1981). Expert testimony is generally required to prove a causal connection between an accident and

---

1. The doctors testifying were Dr. Goltz, Dr. Cowen and Dr. Lopez, all of whom were called by Lewis, and Dr. Gordon, the doctor WMATA chose to examine Lewis.

an injury. There are three exceptions: 1) when the injury develops within a reasonable time after the accident; 2) when causation is clearly apparent; or 3) when the cause of injury relates to matters of common experience, knowledge, or observation of laypersons. *Jones v. Miller,* 290 A.2d 587, 590 (D.C.1972), *citing Wilhelm v. State Traffic Safety Comm'n,* 230 Md. 91, 185 A.2d 715, 719 (1962); *see also Baltimore v. B.F. Goodrich Co.,* 545 A.2d 1228, 1231 (D.C.1988); *International Sec. Corp. of Va. v. McQueen,* 497 A.2d 1076, 1080 (D.C.1985). The court is to decide whether any of these exceptions may be invoked, as the parties and the district court agreed. *See, e.g., Carmichael v. Carmichael,* 597 A.2d 1326, 1329 (D.C.1991); *Kling v. Peters,* 564 A.2d 708, 716 n. 8 (D.C. 1989); *Baltimore,* 545 A.2d at 1231; *McQueen,* 497 A.2d at 1080–81; *Early v. Wagner,* 391 A.2d 252, 254 (D.C.1978); *Jones v. Miller,* 290 A.2d at 591. Expert testimony may assist in the determination. *See Carmichael,* 597 A.2d at 1329; *Baltimore,* 545 A.2d at 1231; *see also Craig v. Chenoweth,* 232 Md. 397, 194 A.2d 78, 79–80 (1963); *Strong v. Prince George's County,* 77 Md.App. 177, 549 A.2d 1142, 1145 (1988), *cert. denied,* 315 Md. 308, 554 A.2d 393 (1989).

■ As to Lewis's knee injuries, the district court properly submitted the question of causation to the jury. Six days after the accident, Dr. Goltz diagnosed Lewis as having a knee condition known as chondromalacia. Dr. Goltz testified that a common cause of this injury is trauma. The district court thought this was enough expert evidence regarding causation and we tend to agree. Even if it were not sufficient, the first exception applies, as the court held, in view of Lewis's testimony that she fell on her knees and in light of the fact that she reported her knee injury to her doctor six days after the accident. *See Jones v. Miller,* 290 A.2d at 591. The district court further held that the third exception was met, because striking one's knee "is the type of simple, straightforward injury that can be understood by a layman."

WMATA argues that the knee injury for which Lewis was being treated at the time of trial was a different knee injury than the one Dr. Goltz originally diagnosed. It is scarcely clear why, even if this were true, WMATA would be entitled to a new trial. Perhaps the point is that Lewis's knee problems caused by the accident did not last as long as she makes out. There is some, but not much, support for that idea. Dr. Goltz indicated in December 1989 that Lewis's "knees were no problem" and he testified that "in my estimation, I would say I could not say within medical certainty" that the pain Lewis had in her knee in May 1990 was caused by the August 1989 bus accident.[2] As against the implications of this is the testimony of Dr. Lopez that he was currently treating Lewis for chondromalacia, the same condition Dr. Goltz had diagnosed, and that "[t]here is no way of healing chondromalacia patella.... What we do is we treat the symptoms of chondromalacia, we treat the symptoms of pain...." When asked "So, if Dr. Goltz found in August 30 of 1989 that she was suffering with chondromalacia, and you find it again in January of 1992, that's consistent with what you just said?," Dr. Lopez responded "Yes."[3] Dr. Goltz himself told the jury that "striking the kneecap" is the most common cause of chondromalacia. When we add Lewis's testimony that the accident caused her to do just that, plus the fact that her knee injury manifested itself shortly thereafter, plus the evidence that the type of injury she sustained does not heal, we see ample grounds for not restricting the jury's consideration of Lewis's knee injury to the period between the accident and December 1989.

■ As to Lewis's problems with her wrist, the district court held that "expert testimony was not needed on the subject of causation" because the "jury could reasonably infer that the wrist injury developed within a reasonable period of time after the

---

2. The parties make nothing of the fact that Dr. Goltz spoke in terms of "medical certainty" rather than a "reasonable degree of medical certainty." *See Baltimore,* 545 A.2d at 1231–32.

3. This is also consistent with Lewis's testimony that the pain in her knee "never left" during the time she was being treated by Dr. Goltz, although it "was getting better."

accident" and "expert testimony is not needed to explain the simple trauma of striking one's wrist; it is easily within the comprehension of a layman." The district court also thought causation could be inferred partly from Dr. Cowen's testimony that Lewis's wrist injury was a rupture in the ligament.

Our review of the record fails to disclose any medical evidence indicating that the accident caused the injury to Lewis's wrist and we can see no basis for dispensing with the need for such evidence. When Lewis first visited Dr. Goltz, six days after the accident, she complained of swelling in the right arm. Dr. Goltz examined her wrist and found that "she had no symptoms or, under examination, of a ligament tear." The first sign of any specific wrist problem did not appear until February 1990. Dr. Goltz diagnosed this as a ganglion cyst, entirely unrelated to the accident.[4] When Lewis eventually saw Dr. Cowen, her complaints were no longer vague references to swelling and pain in the right arm, but "numbness, tingling, pain in the *hand* and *wrist* that woke her up at night, caused her to shake her hand. She wanted to shake her hand in order to get rid of the pain."

Given the absence of any expert testimony tracing her wrist injury to the accident, Lewis rests on the exceptions derived from *Jones v. Miller.* The first exception plainly does not assist her. As Dr. Goltz and Dr. Gordon, WMATA's expert, agreed, a ligament tear of the type for which Lewis had surgery in 1991 would be apparent almost immediately. Dr. Goltz explained:

Q In your experience treating patients who have sustained ligament tears traumatically, are they the type of injury that would manifest themself [sic] with symptoms six days post-accident?

A Most ligament tears manifest themself [sic] immediately or shortly afterwards.

Q By shortly afterwards, what do you mean?

A Probably within the first 24 hours. You can have a partial tear, then you test it, it rips. It's highly unusual six days later to come out with a tear of the wrist. Highly unusual injury. That would not be what I consider reasonable.

Dr. Gordon examined Lewis in August 1990 and, like Dr. Goltz, found that Lewis had a ganglion cyst, but had "no limitation of her motion, she could move the wrist fully." Dr. Gordon stated that the wrist injury Dr. Cowen treated with surgery would require "a significant trauma, and if you have a trauma like that, you think you've broken your wrist, and you bring it immediately to the attention of somebody...." Dr. Gordon summed the matter up by pointing out that when Lewis "was first seen [on the day of the accident], there was no mention of any wrist injury. She then saw Dr. Goltz, ... there was no report of any wrist injury, and she had full range of motion of the wrist. None of those three things I've just mentioned are compatible with somebody having an injury that caused a ligament tear between the scaphoid and the lunate of the wrist."

According to Lewis, her right arm "felt heavy" immediately after the accident, but she was unable to pinpoint the exact location of her discomfort and she never experienced the sort of reaction one would have to a traumatically-induced ligament tear in the wrist. Nothing in this record would support a conclusion—necessary under the first exception—that Lewis's wrist injury developed within a reasonable time after the accident. In fact there is substantial evidence to show that it did not.

The two other exceptions are also inapplicable. It is neither immediately apparent nor a matter of common knowledge or experience that a ligament tear in a wrist, diagnosed in 1991, could have been caused by an accident in 1989, when, for many months thereafter no treating physician discovered

---

**4.** According to Lewis, when Dr. Cowen operated in December 1991 he found no ganglion cyst; therefore Dr. Goltz's diagnosis 22 months earlier, in February 1990, must have been mistaken. Mary Sorenson, Lewis's therapist, did say that "in reading the operative report, I saw no indication that the ganglion existed." Even if one takes this testimony as far as it will go, the possibility remains that Lewis had a cyst but that it dissipated sometime before the operation. Dr. Cowen's testimony suggests as much. He said that "after six weeks after arthroscopy, the patient was much better than before arthroscopy. The ganglion *that she had* had not reappeared."

the tear and the patient manifested none of the symptoms associated with a traumatically-caused injury of that type.

With respect to her wrist injury, Lewis needed expert testimony on causation, but she presented none.[5] Under District of Columbia law the court therefore should not have allowed this claim to go to the jury.

The award of $300,000 in damages is vacated and the case is remanded for a new trial on the issue of damages.[6]

*So ordered.*

WALD, Circuit Judge, concurring in part and dissenting in part:

I concur in my colleagues' conclusion that the district court properly submitted the issue of causation of Lewis' knee injuries to the jury, but do not agree that the district court erred by similarly allowing the jury to decide the question of causation with respect to the wrist injury. The standard of review for the district court's denial of a judgment as a matter of law is narrow, and the challenging party bears an "extremely heavy" burden. *Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529, 1534 (D.C.Cir.) (quotations and citations omitted), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). We review the denial *de novo,* asking whether, viewing the evidence in the light most favorable to Lewis, and giving her every reasonable inference, the evidence is so one-sided that no reasonable juror could find that the brake failure caused her wrist injury. *See Ealy v. Richardson–Merrell, Inc.,* 897 F.2d 1159, 1161 (D.C.Cir.), *cert. denied,* 498 U.S. 950, 111 S.Ct. 370, 112 L.Ed.2d 332 (1990); *see also McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 640–41 (D.C.Cir.1988).

I do not believe that WMATA came close to meeting that heavy burden. There was ample expert evidence to show that Lewis suffered a wrist injury. She complained of swelling and discomfort in her arm, beginning the week after the accident, and continuing for over two years until Dr. Cowen finally performed surgery. While it appears from the record that Lewis did not specifically mention pain in her wrist until her first visit to Dr. Cowen approximately two years after the accident, the jury could have found that the arm pain radiated from the wrist injury, or even that Lewis' references to her arm included her wrist. The surgery performed by Dr. Cowen revealed synovitis and some cartilage damage, which he attributed to an earlier ligament tear. Dr. Cowen described the synovitis as a "swelling of these little linings of the joint" which is comparable to the phenomenon that once you have bitten the inside of your cheek, it is easier to bite it again. Dr. Cowen further explained that the cartilage damage probably resulted from bones rubbing against each other, and compared the damage to having a pebble in your shoe that "becomes an irritant." In sum, Dr.

**5.** According to the dissent, the "jury could have found" that Lewis's arm pain came from her wrist injury. Dissent at 681. Absent expert testimony supporting such a finding, the issue is whether the accident and the injury—here a ligament tear in the wrist—were so close in time that anyone would realize the one caused the other. The problems for Lewis are that her ligament tear was not diagnosed until 1991, more than two years after the accident, and that she had no immediate symptoms of a ligament tear. On this record, to suppose that Lewis's problems with her arm shortly after the accident related to the torn ligament in her wrist is to engage in guesswork. It may be common knowledge that if one injures a wrist, one feels pain in the wrist. But the dissent's idea that a ligament tear in a wrist may be felt, not in the wrist, but in the arm, contradicts the expert testimony presented at trial. If the jury did not credit that expert testimony, it had nothing else to go on. The dissent's other idea is that Lewis's synovitis and cartilage

damage may have been caused by something other than a ligament tear. This too ignores the essential point. No layperson could be expected to have the knowledge and experience needed to make such a finding on any rational basis. To allow the jury to decide, in the absence of expert testimony, what the dissent says may have been, is to allow the jury to speculate.

**6.** Because WMATA's objection to the testimony of Mary Sorenson related only to the wrist injury, we do not pass on it. Nor do we decide whether, as WMATA contends, Lewis's claim for future lost wages should not have gone to the jury. Lewis conceded that her evidence supported only a claim of future lost wages for the four to six weeks after trial. *See* Brief for Appellee—Linda S. Lewis at 30–31. This period has expired. If she in fact lost wages during that time because of WMATA's negligence, the jury may consider this at the new trial.

Cowen's testimony indicates that the symptoms of which Lewis complained after the accident, *i.e.*, long-term swelling and discomfort, are those traditionally associated with synovitis and cartilage damage. It is true that defendant's expert witness testified that a ligament tear would have caused immediate pain in the specific wrist area, but the jury was entitled either to disregard that testimony if it chose, or to infer that the swelling and pain she suffered within a week after the fall came from a cause other than a ligament tear.

Because the cause of the wrist injury relates "to matters of common experience, knowledge, or observation of laymen," *Jones v. Miller*, 290 A.2d 587, 590–91 (D.C.1972) (citations and quotations omitted), Lewis was not required to provide expert testimony on causation. The nexus between breaking a fall with one's hand and an injury resulting from a combination of swelling and bones rubbing together is something that a layperson can analyze without expert testimony, even if the injury was not properly diagnosed until over two years after the accident; there is no time limit to the "common knowledge" exception to the expert testimony requirement. *Cf.* Majority Opinion at 681, n. 5. Lewis should not be penalized for the failure of her initial treating physician, Dr. Goltz, to diagnose the synovitis and the cartilage damage, whatever its underlying origins. Starting from the day of the accident, Lewis consistently reported discomfort in her right arm, which alternately took the form of heaviness, swelling, pain, and tenderness. Moreover, this is the type of medically simple case for which the *Jones* exceptions were designed—Lewis did not have a complicated prior medical history, and there is no evidence to contradict her testimony that she sustained no injury whatsoever to her right arm or wrist either before or after the fall on the bus. *See Jones*, 290 A.2d at 590 (noting that on "many occasions" simple medical questions excuse need for expert testimony); *cf. Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228 (D.C.1988) (requiring expert testimony due to complex nature of disability—anxiety and depression—and multiple preexisting and concurrent possible causes); *Early v. Wagner*, 391 A.2d 252 (D.C.1978) (requiring

expert testimony due to plaintiff's complicated and lengthy medical history and her cerebral thrombosis). Thus there is sufficient evidence from which a reasonable juror could have concluded that the sudden stop of the bus, which threw Lewis out of her seat and caused her to land on her right hand and wrist, caused the subsequent synovitis and cartilage damage. I would therefore uphold the reduced jury award of $300,000.