Remo **CAPELLO**, Plaintiff,

v.

Louis **MARESCA**, et al., **Defendants.**

No. 3:91CV560 (RNC).

United States District Court,
D. Connecticut.

Dec. 22, 1995.

John R. Williams, The Law Offices of John R. Williams, New Haven, CT, Norman A. Pattis, New Haven, CT, for plaintiff.

Thomas M. Murtha, Maher & Murtha, Bridgeport, CT, Geoffrey Lane Squitiero, Maher & Murtha, Bridgeport, CT, for Louise Maresca and William Degoursey.

### ENDORSEMENT RULING

CHATIGNY, District Judge.

Defendants' Rule 50 motion for judgment as a matter of law [doc. # 40–1] is denied. The evidence, viewed in a light most favorable to the plaintiff, adequately supports the jury's verdict. The plaintiff and his supporting eyewitness testified that, although the 50 year old plaintiff did not resist arrest, the defendants subjected him to a violent take down, slamming him to the concrete dock face-first. One of the defendants then kneed him in the back while handcuffing him, causing him to writhe in pain and cry for help. After handcuffing him, the defendants picked him up by his wrists "like a valise" and dragged him to their car, causing his knees to bounce against the ground. Crediting this testimony, the jury could reasonably conclude that the amount of force used by the defendants was excessive.

Defendants' Rule 59 motion for remittitur or, in the alternative, a new trial on damages [docs. # 40–2, 40–3], is granted. Defendants argue that the jury's award of $257,500 in general and special damages (including $7,500 for past and future medical expenses) is grossly excessive compared to awards in other cases and that the evidence is insufficient to sustain such a substantial award because plaintiff presented no expert testimony linking his alleged damages to the incident in question. Both points have considerable merit.

The plaintiff testified that, as a result of the defendants' use of excessive force, his front teeth were jarred loose, his nose was bloodied and he suffered injuries to his left elbow, left wrist and low back. He testified that the injuries were very painful. On arriving at the police station, he demanded that an ambulance be called to take him to a hospital for treatment but was booked and held in a cell without treatment for several hours. Eventually, he was released, an ambulance was called, and he was transported by stretcher to Yale–New Haven Hospital, where he complained of low back pain, pain involving his left elbow and numbness in both hands. X-rays of the lumbar spine showed degenerative changes but no fractures or other evidence of trauma. X-rays of the left elbow showed a bony fragment that might represent a fracture and clinical correlation was suggested. Plaintiff testified that the injuries to his elbow and back continued to bother him at the time of trial and prevented him from doing his usual work as a roofer. In conjunction with his testimony, he introduced medical bills totaling $2,089.63 and tax returns showing a decline in his income.

Plaintiff presented no expert testimony or medical reports concerning the existence, nature, seriousness or duration of any injury he might have sustained. The only evidence of any medical treatment he received consists of the emergency room record from the date of the incident, which shows that he complained of pain involving his left elbow and lumbar spine; a bill from an orthopedist, who saw him twice within three weeks after the incident; and an excerpt from a running account compiled by the office of his regular treating physician, who saw him four times within three weeks of the incident and a fifth time

approximately ten weeks after the incident. There is no evidence that plaintiff has seen a doctor in connection with this matter since September 1989, or that he needs to see a doctor again. There is no medical evidence that he sustained any permanent injury or disability or that any injury he did sustain impaired his ability to work for any period of time.

■ Whether expert testimony is necessary to prove the existence of a particular injury (or other item of damage) and a causal link between the injury and the defendant's tortious conduct may depend on a number of factors. *See Lewis v. Washington Metro. Area Transit Auth.*, 19 F.3d 677, 679 (D.C.Cir.1994); *Moody v. Maine Cent. R.R.*, 823 F.2d 693, 695–96 (1st Cir.1987); *Bushman v. Halm*, 798 F.2d 651, 660 (3rd Cir. 1986). In this case, plaintiffs' subjective complaints relating to his back and elbow might be sufficiently corroborated by the emergency room record and doctors' bills to permit the jury to find that he sustained a sprain or strain of his elbow and back due to the rough treatment he received from the defendants. *See Bushman*, 798 F.2d at 660. However, without the aid of expert testimony, a lay jury could not determine the seriousness or duration of these nonobvious injuries or their effect on plaintiff's ability to work. *See Amaechi v. Clark*, 268 N.J.Super. 186, 193–94, 632 A.2d 1281, 1285 (1993) (medical testimony required to prove that plaintiff's inability to work for seven months was causally related to sprain or strain she allegedly suffered as result of accident).

Assuming plaintiff suffered a sprain or strain of his left elbow and low back, which caused him pain and prevented him from working for a period of time, the jury's award exceeds the limit of reasonable compensation. Plaintiff contends that the award is not excessive because the jury could reasonably award him damages for lost income in the amount of $67,348 and allocate the balance to past and future pain and suffering, emotional distress and destruction of his ability to enjoy his usual occupation as a roofer. In the absence of expert testimony, the evidence is insufficient to support a determination that plaintiff is unable to work as a roofer and that his inability to work as a roofer is causally related to the defendants'

conduct. Moreover, even if the jury could reasonably award damages for lost income in the amount of $67,348, as plaintiff claims, the jury's award would still be excessive. Based on a review of awards in other cases, an award of $180,000 would exceed the maximum amount of reasonable compensation for noneconomic losses that could be supported by the evidence in this case. *See Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141 & n. 8 (5th Cir.1991); *Nairn v. National R.R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir.1988); *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1037–1041 (3rd Cir.1987); *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 92–93 (5th Cir.1984); *Taylor v. National R.R. Passenger Corp.*, 868 F.Supp. 479, 482–486 (E.D.N.Y.1994). *See also Mendoza v. City of Rome*, 872 F.Supp. 1110, 1119–1122 (N.D.N.Y.1994).

On the existing record, the maximum amount of compensatory damages that could reasonably be awarded is $150,000. Plaintiff will have the option of accepting this sum or facing a new trial on the issue of compensatory damages only. A new trial on that issue will commence with jury selection on February 6, 1996, unless plaintiff files an acceptance of a remittitur in the sum of $107,500 on or before January 19, 1996. Plaintiff's application for an award of fees and costs [doc. # 42] will be held in abeyance pending further proceedings.

So ordered.