Tahishia R. McLEISH and Beverly V. McLeish, Appellants,

v.

Lester A. BEACHY, Appellee.

No. 98–CV–897.

District of Columbia Court of Appeals.

Submitted Feb. 15, 2000.
Decided March 2, 2000.

---

Suzanne Macpherson–Johnson and Harry Tun were on the brief for appellants.

Robert G. McGinley was on the brief for appellee.

Before FARRELL and REID, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

Appellants, a mother and child, filed suit in May 1996 alleging injury sustained by the child (hereafter "Tahishia") in an accident that occurred while she was a passenger in a school bus driven by appellee. Before trial, appellee moved the court to strike the *de bene esse* deposition of appellants' sole medical expert and grant summary judgment on the ground that the expert failed as a matter of law to establish proximate causation between the acci-dent and Tahishia's alleged injuries, which consisted of ongoing headaches. The trial judge granted the motion essentially be-cause, as he read the expert's testimony, it would not enable the jury to quantify the relationship between preexisting head-aches Tahishia had experienced and those traceable to the accident. We reverse and remand, holding that the expert's testimo-ny, if credited, was sufficient to allow a jury to conclude that Tahishia suffered discrete injury—migraine headaches—as a result of the bus accident.

## I.

While on a field trip to Washington, D.C. in May 1993, the bus in which Tahishia was riding struck an automobile. Tahishia stated in her deposition that when the bus driver (appellee) applied the brakes, she struck part of her face on the seat in front of her, loosening a tooth and causing her lip to bleed. A hospital examination that evening revealed few signs of injury, but beginning in April 1995 Tahishia was treat-ed by a physician for headaches which, according to his report, she had had al-most daily "for 2–3 years," accompanied by "some light-headedness and nausea and occasional blurred vision." A second phy-sician who treated the child in May 1996 reported that she had "experienced head-aches for the past 4 years. They are worsening. She describes them as throb-bing. They occur daily [and] ... are ac-companied by blurred vision, diplopia, tearing, nausea, vomiting, light-headed-ness, and numbness of both legs." He diagnosed her as "[p]ositive for head inju-ry. The patient experienced headaches prior to [the bus accident] injury but they worsened afterwards"; and his impression was that they were migraine headaches.

Tahishia began receiving care from Dr. Amy Stauffer, a pediatric neurologist, in June 1996 (three years after the accident). Dr. Stauffer was then listed as the appel-lants' sole medical expert at trial. In her *de bene esse* deposition, Dr. Stauffer

sought to distinguish between two different forms of headaches for which she had treated (and was still treating) Tahishia. On the basis of what the child and her mother had told her, Dr. Stauffer was aware that before the bus accident Tahishia had experienced "just normal headaches that anybody else would get, tension type where you lie down and probably don't even require medicine." Since the accident, however, Tahishia suffered from both tension headaches and migraine headaches, for which Dr. Stauffer was treating her separately:

> [Tahishia] does complain of daily headaches, mostly in the afternoon. These headaches I consider to be tension headaches. Most daily headaches are not migraine headaches but are, in fact tension headaches. We are trying to deal with those with physical therapy. She does also have the migraines which, when she gets them, do interfere [with her life]. She does not go about her usual activities. She goes into the bedroom. She sometimes gets sick to the stomach and basically has to lie down and take something to go to sleep. And so she can't be doing her normal activities during the time that she has a migraine.

For the migraine headaches, Tahishia was being treated primarily with medication.

Dr. Stauffer expressed the opinion, "based on a reasonable degree of medical probability," that "the trauma [associated with the bus accident had] cause[d Tahishia's] headaches to begin." Comparing the symptoms of the ordinary headaches she had experienced before the accident with those characteristic of migraines, the doctor found "no evidence" that Tahishia's migraines pre-dated the accident. Symptomatically, the two forms of headache differ markedly:

> [M]igraines tend to be much worse than your every day, what we consider tension type headaches. The tension type headaches are usually pressure, usually feel like pressure and involve the whole head or like a band around the head or a[sic] and sometime the muscles in the neck can become involved and sore. Those headaches are basically what we could call everyday or tension, or when you have a hard day at work, you come home and have a headache. That's the normal headache type.
>
> Migraine is different, both in the fact that it affects the blood vessels and also in the intensity of pain and the other symptoms that are involved. You generally, with tension headaches, you don't throw-up. Generally, with tension headaches you don't see funny things in front of your eyes. You don't usually get numb or weak on one side of the body with a tension headache. The degree of pain is certainly a lot greater.

Moreover, according to Dr. Stauffer, unlike ordinary headaches caused by tension, migraine headaches may be caused by trauma, although they need not be and the trauma "can be relatively minor." But, again "with[in] the reasonable degree of medical probability," Dr. Stauffer's opinion was "that if someone [like Tahishia] had no migraines and then all of a sudden after the trauma [of an accident] they're having migraines, that's pretty clear that that ... played a role in causing the migraine for that person."

Cross examined by appellee's counsel, Dr. Stauffer acknowledged that she had made previous statements less explicit in linking the migraines solely to the accident. Thus, in an earlier deposition she had stated that Tahishia "was suffering from migraine headaches *which worsened* after the bus accident" (emphasis added); and in a March 1997 letter she had opined that Tahishia's migraine had "become much worse as a result of her accident on 5/19/93." Her opinion now, however, was that the migraine and tension headaches were "clearly distinguish[able]" in their respective origins:

> Q. The migraines, you relate to the accident?
>
> A. Yes.

Q. The tension headaches, you do not?

A. Not clearly, no. She had those before. Those are not migraine headaches. They are of the type that people get without any trauma.

## II.

In moving to strike Dr. Stauffer's testimony as legally insufficient (and thus end appellants' case),[1] appellee argued that the expert had failed to differentiate between Tahishia's "pre-existing condition" of tension headaches and the migraine headaches allegedly caused by the bus accident. Appellee cited this court's decision in *Williams v. Patterson*, 681 A.2d 1147 (D.C.1996), for a requirement that in cases involving a pre-existing injury or disorder where a tort plaintiff alleges more or less permanent injuries, she must present expert testimony addressed to— and quantifying—the extent to which the tort aggravated or augmented the plaintiff's pre-existing injuries. The trial judge agreed with this analysis. In granting the motion to strike, he focused upon Dr. Stauffer's statements that the trauma of the bus accident "worsened" Tahishia's migraines, stating that "what we have here ... is a doctor [who] continues to say that the accident worsened a certain condition and is not able to attribute what aspect of the accident relates to the permanency that she's claiming or to the worsening of the condition." Without an "expert quantification" of the extent to which the accident aggravated the prior condition of headaches, the judge believed that the jury would have no way of reasonably computing damages traceable to the accident and not the pre-existing condition for which appellee bore no liability.

## III.

Appellants contend that by mistakenly analyzing the causal issue in this case as aggravation of a pre-existing condition (*i.e.*, headaches), the trial judge wrongly applied standards of apportionment to the issue of whether appellee's negligence (if proven) caused Tahishia's injury. They argue that Dr. Stauffer's testimony provided a legally sufficient basis for a jury to draw a discrete causal link between Tahishia's migraine headaches and the bus accident, regardless of the child's previous and continuing experience with tension headaches. They assert that, although a jury would have to grapple with the fact of Tahishia's ongoing concurrent treatment for both forms of headache, Dr. Stauffer delineated between the two both symptomatically and causally such that a jury would fairly be able to award damages for the one and not the other. In short, this is not a case of "aggravation," in appellants' view, but of a new and separate injury allegedly caused by a negligent act and a claim for damages restricted only to that injury.

We find this argument persuasive. For purposes of this appeal, we assume that if this were a case of claimed aggravation of a pre-existing injury or condition, Dr. Stauffer's testimony would have fallen short—as a matter of law—in enabling a jury to decide the extent to which the bus accident "increased or augmented [the] sufferings" Tahishia had experienced before the accident. *See Williams v. Patterson*, 681 A.2d at 1150 (citations omitted) (pointing to "settled" law "that where an accident does not cause a diseased condition, but only aggravates and increases the severity of a condition existing at the time of the accident, [the plaintiff] could only recover for such increased or augmented sufferings as were the natural and proximate result of the negligent act").[2] We do

---

1. In opposing the motion appellants did not dispute, nor do they now, that medical expert testimony was required on the issue of causation.

2. Appellee's suggestion, accepted by the trial judge, that *Williams v. Patterson* imposed a requirement for the expert to "quantify" the extent to which the negligent act augmented the previous injury reads too much into that

not need to decide that question because Dr. Stauffer's testimony provided a reasonable basis for a jury to find a new and distinct injury traceable to the accident. Difficult though it might be for a jury to distinguish migraine headaches from a recurrent pattern of tension headaches, the expert differentiated between the two and explained why in her opinion Tahishia's severest symptoms—originating with the accident—bespoke the one form and not the other. Although the doctor in other places appeared (in the judge's words) to have "combined . . . or confused" the two kinds of headache, an inconsistency of that sort in her several statements goes to the weight of her testimony rather than its legal sufficiency. Appellants will face sizeable difficulties in proving their theory that the accident caused Tahishia new and qualitatively distinct suffering—among them the fact that she was not treated for headaches for nearly two years after the accident; became menstrual and was taking hormone shots during that period (both of which, Dr. Stauffer admitted, could induce strong headaches); and had had a history of vomiting, perhaps even "frequent vomiting," before the accident. But, applying the legal standard for summary judgment or a directed verdict,[3] neither those facts nor the deficiencies in Dr. Stauffer's testimony are sufficient to permit removal of the issue of causation from the jury.

The judgment of the Superior Court is, therefore,

*Reversed.*

decision. In *Williams,* which was actually a legal malpractice case, *no* medical expert had been called to testify "that the injuries [the plaintiff] suffered (and for which her attorney assertedly neglected to take action) stemmed in part from the automobile accident." 681 A.2d at 1150. In explaining why expert testimony was necessary to establish that causation, we did not imply that an expert would have to quantify—in percentage terms—the degree to which the accident worsened the prior condition, so long as the expert could "differentiate between a present medical condition and a preexisting one in evaluating the causal role of [the] intervening accident." *Id.* See also id. (citing *Borger v. Conner,* 210 A.2d 546, 548 (D.C.1965), as a case "properly submitted to jury on expert medical testimony that preexisting 'quiescent' condition was 'very much aggravated by,' and very much worsened by, the accident.' "). Further, although in suggesting the complexity of the causal inquiry (and hence the need for expert testimony) we quoted a five-part test set forth in a textbook on damages, we did not imply that the expert's opinion must conform to this test in every case. *See id.* at 1151 n. 3 ("We are not called upon to decide, . . . and do not, whether a jury must be instructed on aggravation in this detailed and schematic a fashion").

3. *See Hill v. White,* 589 A.2d 918, 921 n. 8 (D.C.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) ("The trial judge considering a summary judgment motion focuses on the same question as the trial judge ruling on a directed verdict motion: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' ").