Ella Jean **WILLIAMS,**
et al., **Appellants,**

v.

**LUCY WEBB HAYES NATIONAL TRAINING SCHOOL FOR DEACONESSES AND MISSIONARIES** t/a Sibley Memorial Hospital, et al., **Appellees.**

**No. 06–CV–644.**

District of Columbia Court of Appeals.

Argued March 14, 2007.

Decided May 17, 2007.

William S. Hopkins, for appellants.

Robert W. Goodson, with whom Timothy Altemus, Washington, DC, was on the brief, for appellees.

Before WASHINGTON, Chief Judge, and FARRELL and FISHER, Associate Judges.

FARRELL, Associate Judge:

This appeal presents one question: Was the plaintiff/appellant required to present expert medical testimony on causation to support her claim of damages for pain and suffering allegedly caused by the negligence of hospital employees in transferring her onto a gurney for transport? We answer that question yes and no. The trial judge concluded that expert testimony was necessary to establish causation as to all aspects of appellant's claim, and granted summary judgment to the defendants (hereafter "the Hospital") when she did not designate such an expert. We conclude that, although expert testimony was required as to a key part of the causal link appellant alleged between the negligence and her injuries, she was entitled to go to a jury on the remainder of her claim without need for expert testimony on causation. We affirm in part and reverse in part, and remand for a trial.

I.

As alleged in her complaint and opposition to the summary judgment motion, plaintiff/appellant Williams (hereafter

Williams) was admitted to Sibley Memorial Hospital on November 1, 2001, to undergo a total left hip replacement. The surgery was performed on that date by Denis R. Harris, M.D., and Williams was returned to her room in the hospital. Immediately after the surgery, Hospital nursing staff had applied inflated, plastic sleeve-like devices, called circulation cuffs, to both of her legs to promote blood circulation. These devices were attached to plastic tubing and an air compressor to maintain adequate internal air pressure.

That same morning, two employees arrived with a gurney to be used to transport Williams to the radiology department of the Hospital. According to the complaint, the employees did not consult with the attending nurse, and no nurse was present to disconnect the cuffs before Williams was transferred to the gurney. Before the transfer, the employees did not remove the circulation cuff from her left leg, causing it to stay attached to the plastic tubing and air compressor. The complaint alleged that, despite Williams' protests, the employees pulled her from the bed onto the gurney "with great force ... thereby dislocating the prosthetic hip joint within [her] left lower extremity, causing excruciating pain." Williams alternatively claimed (particularly in opposing summary judgment) that, even if her hip had become dislocated from natural causes before the transfer to the gurney, the employees, by "pulling her onto the gurney without disconnecting the circulation cuff," caused her "excruciating pain" during all or part of the next twelve hours.

Thereafter, Williams was taken to the radiology department where the left hip area was x-rayed and the prosthetic hip was found to be out of place and dislocated. As a result, according to the complaint, she "endured many hours of severe pain and discomfort until a second surgical procedure could be scheduled." Approximately twelve hours after her transfer to the gurney, the prosthetic head and shaft were replaced in a second operation by Dr. Harris.

Dr. Harris testified in deposition that when he had visited Williams at about 7:30 a.m. following the original surgery, her replaced hip "seemed to be dislocated at that point in time" and she was in pain. For this reason, he ordered her to be transported for an x-ray to seek confirmation of the accident. Williams, by contrast, testified that at the time Dr. Harris visited her she was not experiencing pain, but when the employees tried to pull her onto the gurney, her pain was "immediate."

## II.

■ As explained, in her complaint Williams alleged principally that the negligence of the employees in transferring her had caused her replacement hip to become dislocated. For this negligence, she claimed damages not only for the pain and suffering she experienced in the succeeding hours, but also for the "substantial medical expenses" she incurred that stemmed partly from the second operation performed that evening. In moving for summary judgment, the Hospital contended that, even if its employees had been negligent in transferring Williams to the gurney, there were no triable issues of fact on causation because she had designated no medical expert to testify that the transfer, rather than natural causes such as movement in bed following a hip replacement performed on a woman with a conceded long history of back surgery, had caused the hip to become dislocated. This testimony was indispensable, the Hospital argued, in light of Dr. Harris's testimony that the hip already appeared to be dislocated when he visited her that morning— which, indeed, was why he ordered her transported to radiology for an x-ray. The

trial judge agreed that expert testimony was necessary to establish causation between the negligent transfer to the gurney[1] and the dislocation of Williams' hip. We think the judge was correct in that regard.

■ Although "[t]here is no inflexible requirement in a personal injury case that the plaintiff produce expert medical testimony on causation," *Williams v. Patterson,* 681 A.2d 1147, 1150 (D.C.1996), expert testimony is required unless "the issue of causation can be resolved within the realm of ordinary human knowledge and experience." *Lasley v. Georgetown Univ.,* 688 A.2d 1381, 1385 (D.C.1997) (citation and internal quotation marks omitted). We agree with the Hospital that ordinary human knowledge would not enable a juror to find that the hip dislocation was caused by the transfer of Williams to the gurney. Implicit in Dr. Harris's conclusion that the hip seemed to have become dislocated before the transfer is that such misadventures can occur naturally after hip replacement, particularly in the case of a patient with a long history of previous back surgery such as Williams. In her brief on appeal, Williams all but concedes this point, stating that "[f]or the purposes of this [a]ppeal, it is not material whether appellant's hip was dislocated prior to her being moved or during the transfer." Br. for App. at 9; *see also id.* ("While the timing of the dislocation may impact upon the damages that may be claimed by the appellant, it does not negate the negligence of appellee's employees [in failing] to disconnect the circulation cuffs at the time she was being transferred."). The trial judge correctly ruled, in short, that without expert testimony on causation Williams could not go to a jury on whether the transfer to the gurney had caused the

dislocated hip that in turn required further surgery.

■ This conclusion, however, does not mean that the Hospital was entitled to summary judgment altogether. As we have explained, Williams' alternative claim in the pleadings, and the one she now presses on appeal, is that the act of forcing her onto the gurney against the restraint of the circulation cuff caused, or at least substantially contributed to, the intense pain and suffering she endured over the next twelve hours even if the hip had already become dislocated. *See, e.g., District of Columbia v. Freeman,* 477 A.2d 713, 716 n. 9 (D.C.1984) (cause-in-fact component of proximate causation requires proof that "the conduct of the defendant was a *substantial factor* in bringing about the result") (citation and quotation marks omitted; emphasis added). And Williams contends that expert testimony was not required before a jury could find that her forcible move from the bed to the gurney substantially caused the resulting pain, especially if it accepted her testimony that, whatever the condition of her hip, she was not experiencing pain before the employees undertook to move her. We agree, and hold that ordinary human knowledge would permit a jury to find that Williams would not have suffered the post-movement pain, or some part of it, except for the negligent manner in which she was transferred.

■ "[E]xpert medical testimony on the issue of causation [is] not ... necessary" when the medical question presented is not a "complex" one. *Bushong v. Byung Kyu Park,* 837 A.2d 49, 55 (D.C.2003); *see also, e.g., International Sec. Corp. of Va. v. McQueen,* 497 A.2d 1076, 1080 (D.C.1985) ("In the absence of 'complicated medical

---

1. For purposes of summary judgment, the Hospital effectively conceded that the employ-

ees had negligently transferred Williams to the gurney.

questions,' the plaintiff's own testimony, without need for supporting expert medical testimony, will suffice to prove causation of injury."). Unaided by expert testimony, a jury crediting Williams' testimony that she was in no pain before the transfer could still find that a forcible pull in moving her to the gurney exacerbated the dislocation of her hip and precipitated the intense pain that she suffered in the hours that followed. That determination would not be a "complicated medical question[ ]" requiring expert testimony. The Hospital argues the contrary by asserting that an expert was necessary to allow the jury to apportion Williams' damages—to decide, that is, what part of her pain and suffering stemmed from the *negligent* transfer and what part stemmed from the hip dislocation itself, in the sense that even a non-negligent (and necessary) transport of the patient to the radiology department would likely have caused pain to someone with her condition. But assuming that a dislocated hip, even in a (presumably sedated) patient not experiencing pain from it at the time, would have triggered some pain from movement no matter how carefully Williams was transferred, a jury could reasonably find that the forcible transfer contributed to her suffering without expert testimony. Indeed, quantifying pain attributable to one source (a violent movement) and not the other (a previously quiescent hip condition) would inevitably be an imprecise determination, and it is not apparent to us how an expert's apportionment of that suffering would be superior to that of a lay jury exercising sound judgment. Although a *defense* expert conceivably would testify that Williams, lying in bed with a dislocated hip, was a case of intense pain "waiting to happen"—*i.e.*, with any movement, negligent or not—that does not mean that she was obliged to present contrary testimony as part of her *prima facie* case. A lay jury considering both the acts of the hospital employees and

Williams' condition at the time could fairly decide what role, if any, negligence played in causing her pain and suffering and what compensation she should receive as a result. *Washington Hosp. Ctr. v. Martin*, 454 A.2d 306, 308–09 (D.C.1982).

The Hospital cites our decision in *Williams v. Patterson, supra*, as requiring expert testimony on this point, but we do not agree. *Patterson* recognized and applied traditional principles of aggravation "requir[ing] a jury to differentiate between a present medical condition and a preexisting one in evaluating the causal role of an intervening accident"; and it held, on the facts presented there, that expert testimony was necessary to help the jury identify those "*increased or augmented* sufferings proximately resulting from the accident [that alone] are compensable in court." *Patterson*, 681 A.2d at 1150 (internal quotation marks omitted; emphasis added). But the situation in *Patterson* was markedly different from the one here. The evidence there "demonstrate[d] an obvious 'complication' in the causation issue," *id.*, in that the jury "was called upon to consider evidence not just of [the plaintiff's] preexisting condition"—*i.e.*, a "long previous history of back problems"—but of "subsequent falls" she had experienced (one resulting in a broken leg) after the automobile accident in question and before the herniated disc operation that was the main component of her damage claim. *Id.* at 1151. And the "[causation] issue [was made] even more complex" by the fact that the accident was "asserted to have caused permanent injuries." *Id.* As we stated, quoting one commentator:

Such permanency in the aggravation setting, especially where the natural progression of the preexisting condition must be taken into account, will ordinarily not be obvious, thus requiring the testimony of medical witnesses to establish both the fact of a permanent aggra-

vation and causation attributable to the defendant.

*Id.* (quoting M. MINZER, ET AL., DAMAGES IN TORT ACTIONS, Vol. 2 § 15.33[1], at 15–80); *see also id.* (quoting *Rehnke v. Jammes,* 283 Minn. 431, 168 N.W.2d 494, 497 (1969)) ("It is within the peculiar expertise of the medical profession to assess the permanent damage [to the spine] which has been caused by each of successive accidents").

Williams' case involves no such complicated history of causation leading to injuries claimed to be permanent. Her jury would be asked to decide only whether any negligence of the employees contributed to pain and suffering that she experienced over a period of hours, not longer; the more complex question of what had caused the dislocation of her new hip—and the resulting need for a second hip replacement and damages associated therewith— would not be before the jury. In these circumstances, we hold that expert testimony is not required before Williams may present her claim for limited damages to a jury.

*Affirmed in part and reversed in part, and remanded for trial.*