*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-688

WILLIE M. FOLKS, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-3033-12)

(Hon. Natalia M. Combs Greene, Trial Judge)

(Argued March 6, 2014　　　　　　　　　　　　Decided June 26, 2014)

*Keith W. Watters* for appellant.

*John W. Donovan*, Assistant Attorney General for the District of Columbia, for appellee. *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Gregory M. Cumming*, Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and KING, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Willie M. Folks sued the District of Columbia, alleging that he was injured by the negligent conduct of police officers who arrested him. The trial court granted summary judgment to the District, and Mr. Folks seeks review of that ruling. We reverse.

# I.

According to the amended complaint, officers of the Metropolitan Police Department arrested Mr. Folks, handcuffed him, and negligently placed him in the back of a police cruiser without using a seat belt or other safety restraint. The officer driving the cruiser allegedly hit the brakes abruptly and negligently, causing Mr. Folks to be thrown into the cruiser's safety screen. Mr. Folks allegedly suffered serious head, neck, and back injuries as a result.[1] He subsequently sought medical treatment from three physicians: Doctors Salter, Batipps, and Margulies.

After the close of discovery, the District moved for summary judgment. Among other things, the District argued that Mr. Folks had failed to produce adequate expert evidence to support his claim that his injuries were caused by the incident at issue rather than a prior work-related incident during which he had sustained back injuries.

In response, Mr. Folks provided an affidavit stating that the police officers' conduct caused Mr. Folks's head and body to hit the cruiser's safety screen, and

---

[1] Although Mr. Folks raised other theories of liability, the parties agree that only Mr. Folks's negligence claim remains at issue.

that Mr. Folks experienced "immediate headache, neck pain and increased low[er] back pain." Mr. Folks also argued that medical records from his treating physicians supported the conclusion that the incident at issue caused Mr. Folks's injuries. Mr. Folks acknowledged that he might need an expert to "distinguish between any preexisting and new injuries."

The trial court granted summary judgment. The trial court noted that Mr. Folks had failed to designate an expert to address the issue of causation and had failed to present sworn testimony of his own on the issue of causation. The trial court further reasoned that although the medical records relied upon by Mr. Folks "provide 'impressions' and summaries of tests p[er]formed and treatment prescribed," they were unsworn and did not constitute evidence that the police officers' conduct caused or exacerbated Mr. Folks's injuries. Finally, the trial court stated that the issue of causation was complex because of Mr. Folks's preexisting back injury. The trial court concluded that Mr. Folks failed to provide sufficient evidence of injury and causation to create a genuine issue of material fact.

## II.

We review de novo orders granting summary judgment. *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011). "[W]e independently analyze the record in the light most favorable to the non-moving party, drawing all reasonable inferences from the evidence in the non-moving party's favor." *Id*. We will uphold the grant of summary judgment if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). The plaintiff in a negligence action must establish among other things that the defendant's negligence caused injury to the plaintiff. *See, e.g.*, *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). We conclude that Mr. Folks provided sufficient evidence of injury and causation to survive summary judgment.

## A.

According to his affidavit, Mr. Folks had an immediate headache, neck pain, and increased back pain after he was thrown into the cruiser's safety screen. Moreover, the medical records from Mr. Folks's treating physicians provided further evidence of causation. Dr. Salter diagnosed Mr. Folks as suffering from

"1. Acute cervical spine strain, moderate. 2. Acute lumbosacral spine strain, moderate. 3. Posttraumatic headaches." Dr. Salter also opined that those conditions were "[s]econdary to the injuries suffered" during the incident at issue, and were a "direct result of the history" provided by Mr. Folks, which included a description of the incident. Although Dr. Salter's records do not explain the term "secondary," we must view the evidence in the light most favorable to Mr. Folks. *Medhin*, 26 A.3d at 310. So viewed, Dr. Salter's records provide significant support for the claim that Mr. Folks suffered neck, back, and head injuries as result of the police officers' conduct. *See generally, e.g.*, *Novak v. Lee*, 600 N.E.2d 260, 264 (Ohio Ct. App. 1991) (medical testimony that injury was "secondary" to car accident meant that injuries were "immediately derived from" car accident) (citing *Webster's 9th New Collegiate Dictionary* 1060 (1990)), *abrogated on other grounds by Pruszynski v. Reeves*, 881 N.E.2d 1230 (Ohio 2008).

Medical records from the other treating physicians also supported Mr. Folks's claim. Dr. Batipps's consultation report opines that Mr. Folks was suffering from posttraumatic cervical strain, headaches, and lumbar strain, due to the incident at issue. Dr. Batipps's report also indicates that the incident aggravated Mr. Folks's prior lumbosacral pain. Finally, Dr. Margulies's letter

expressed the "impression" that Mr. Folks was suffering "post traumatic migraine and cervical strain as a result of" the incident at issue.

Taken together, this information created a reasonable dispute of material fact on the question whether the police officers' alleged conduct caused injury to Mr. Folks. The evidence that Mr. Folks's neck pain and headaches arose immediately after the incident by itself created a jury question on the issue of causation. *See, e.g.*, *International Sec. Corp. of Va. v. McQueen*, 497 A.2d 1076, 1080 (D.C. 1985) ("In the absence of complicated medical questions, the plaintiff's own testimony, without need for supporting expert medical testimony, will suffice to prove causation of injury. No complicated medical question arises when . . . the injury develops coincidentally with, or within a reasonable time after, the negligent act . . . .") (citations and internal quotation marks omitted). Mr. Folks's claim was further supported by medical records from three different treating physicians, which reflected consistent diagnoses and attributed Mr. Folks's injuries to the incident at issue. *Cf., e.g.*, *Safeway Stores, Inc. v. Buckmon*, 652 A.2d 597, 606-07 (D.C. 1994) (plaintiff provided sufficient evidence on issue of causation by introducing medical records describing diagnosis of lumbosacral strain and subsequent recurrence, as well as testimony of treating physician).

**B.**

We are not persuaded by the District's arguments to the contrary. It is true, as the District points out, that Mr. Folks had a serious preexisting back condition. In order to prove causation with respect to any back injury, the District argues, Mr. Folks therefore would have to present testimony from a designated expert witness differentiating between Mr. Folks's preexisting condition and his condition after the incident at issue. *See, e.g.*, *Williams v. Patterson*, 681 A.2d 1147, 1150-51 (D.C. 1996) ("In cases presenting medically complicated questions due to multiple and/or preexisting causes, or questions as to the permanence of an injury, we have held that expert testimony is required on the issue of causation.") (internal quotation marks and brackets omitted). Even if the District were correct, however, this point would have at most provided a basis for precluding Mr. Folks from relying on the injury to his back to establish his case. Whatever complexities Mr. Folks's preexisting back condition created, those complexities provide no basis for precluding Mr. Folks from relying on his alleged head and neck injuries, which did not involve a preexisting condition.

The District responds that Mr. Folks forfeited this point, by failing to bring it to the trial court's attention when opposing summary judgment. We conclude

otherwise. In opposing summary judgment, Mr. Folks noted that he was alleging three different injuries: head, neck, and back. Mr. Folks also pointed out the limits of the District's argument that a designated expert witness would be necessary to address issues raised by preexisting injuries, stating that: "an expert may be needed to distinguish between any preexisting and new injuries." These statements sufficed to bring Mr. Folks's present point to the trial court's attention. *See generally, e.g.*, *Dada v. Children's Nat'l Med. Ctr.*, 715 A.2d 904, 907 (D.C. 1998) (appellant preserved argument for purposes of appeal by bringing matter "sufficiently to the trial court's attention").

More fundamentally, we do not agree that Mr. Folks was required to designate an expert witness pursuant to Superior Court Civil Procedure Rule 26 (b)(4), which governs discovery with respect to expert witnesses whose opinions are "acquired or developed in anticipation of litigation or for trial." As the District acknowledges, in some circumstances a treating physician can testify at trial without being formally designated as an expert witness subject to Rule 26 (b)(4)'s discovery requirements. *See, e.g.*, *Adkins v. Morton*, 494 A.2d 652, 657 (D.C. 1985) (physician who treats patient and "obtains and develops his information and opinions in the course of his treatment" should be treated as ordinary witness rather than as expert witness subject to special discovery

requirements of Rule 26 (b)(4)). The treating physicians Mr. Folks relies upon fit comfortably within this principle.

The District speculates, however, that the treating physicians would not have been able to testify at trial about causation without reviewing additional material in order to prepare for their testimony and to formulate additional opinions. Thus, the District contends, Mr. Folks was required to designate one or more of the treating physicians as an expert witness. On the current record, however, we see no basis for the District's speculation. Viewed in the light most favorable to Mr. Folks, the medical records suggest that the treating physicians would be able to testify at trial about their opinions on the issue of causation based on the information that they had obtained in their treatment of Mr. Folks. *Cf. Safeway Stores*, 652 A.2d at 606 (rejecting argument that treating physician's trial testimony "must have been developed specifically for purposes of litigation").[2] Although the District suggests that treating physicians should not be permitted to testify at trial about causation unless they have been formally designated as experts and subject to the special

---

[2] On remand, the District will be free to file a motion seeking disclosure of any opinions from any of the treating physicians that would be properly subject to the pretrial-disclosure provisions of Rule 26 (b). In that context, Mr. Folks would bear the burden of establishing that the opinions of his treating physicians were exempt from such disclosure. *See Gubbins v. Hurson*, 885 A.2d 269, 278 (D.C. 2005).

discovery rules applicable to experts, this court has already concluded otherwise. *Safeway Stores*, 652 A.2d at 606 (where medical records of treating physician indicated physician's opinion as to causation, counsel for defendant "could not claim surprise" because records "should have alerted counsel to the need for pretrial deposition of [physician]").

The District also suggests that the medical records were insufficient because they did not "state[] a conclusion within the legal and verbal framework of proximate causation." *Williams*, 681 A.2d at 1151. In particular, the District emphasizes that all three physicians used the word "impression" in describing their diagnoses and Mr. Folks's condition. As the District acknowledges, however, "an expert need not say the magical phrase of 'reasonable medical certainty[.]'" *Carmichael v. Carmichael*, 597 A.2d 1326, 1330 (D.C. 1991). The medical reports must be considered as a whole and viewed in the light most favorable to Mr. Folks. *See, e.g., Ray v. Queen*, 747 A.2d 1137, 1144 (D.C. 2000). So understood, we view the medical reports as sufficient to raise a jury question on the issue of causation. Although the forms used by Dr. Salter and Dr. Batipps included the word "impression" as the heading for the section containing the doctor's conclusions, both doctors stated clear and unqualified conclusions as to Mr. Folks's condition and the causes of that condition. Dr. Margulies's report is

worded more equivocally, but it still provides some support for the conclusions reflected in the reports of the two other doctors. Taken together, the records, as well as Mr. Folks's affidavit, suffice to raise a jury question on the general issue of causation. *See generally, e.g.*, *Thompson v. Shoe World*, 569 A.2d 187, 190-91 (D.C. 1990) ("Questions of causation are ordinarily issues of fact for the jury. Only if there were absolutely no facts or circumstances from which a jury could reasonably have found . . . proximate cause . . . would the question have been one for the court. But if . . . the facts are such as to cause reasonable men to differ, then the question is clearly one for the determination of the jury.") (citation and internal quotation marks omitted).

The closest question is whether Mr. Folks presented sufficient information to avoid partial summary judgment with respect to the injury to his back. On this issue, the District relies on our decisions in *Williams* and *Carmichael*. We view both cases as distinguishable. In *Williams*, the "closest thing to a formal opinion in the written reports" was a statement that "[i]t is difficult to say if this [the accident] is exactly the cause of her injury, but *it certainly is possible.*" 681 A.2d at 1151 (brackets and emphasis in *Williams*). In *Carmichael*, the physician's testimony about causation was expressed in terms of a common association between the alleged incident and the patient's symptoms. 597 A.2d at 1329-30. In the present

case, however, the medical records from Dr. Salter and Dr. Batipps clearly express the conclusion that Mr. Folks's back symptoms were exacerbated by the incident at issue. More importantly, *Williams* and *Carmichael* both involve post-trial challenges to the sufficiency of the evidence to support a verdict. *Williams*, 681 A.2d at 1150-51; *Carmichael*, 597 A.2d at 1327. In that context, the verdict must be set aside if the plaintiff failed to introduce adequate evidence indicating the extent to which the plaintiff's injuries were attributable to the incident at issue as opposed to a preexisting condition. *Williams*, 681 A.2d at 1150-51. The same is not true at the summary-judgment stage. *See, e.g.*, *Cormier v. District of Columbia Water & Sewer Auth.*, 959 A.2d 658, 667 (D.C. 2008) ("In the District of Columbia (as elsewhere), in order to survive a motion for summary judgment based on the asserted insufficiency of proof of damages, a plaintiff need not, at this stage, show the amount of damages; he is obligated only to show that they exist and are not entirely speculative.") (internal quotation marks and brackets omitted).

Finally, the District argues that this court could affirm the grant of summary judgment on the alternative ground that Mr. Folks failed to provide sufficient evidence that the police officers acted negligently. The trial court did not definitively resolve that issue. We exercise our discretion to leave that issue for resolution by the trial court in the first instance. *See, e.g.*, *Crawford v. Katz*, 32

A.3d 418, 436 (D.C. 2011); *Cosio v. District of Columbia*, 940 A.2d 1009, 1014 (D.C. 2008). We therefore reverse the order granting summary judgment and remand for further proceedings.

*Reversed.*