UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VENANCIO AGUASANTA ARIAS, et al., | ) ) ) ) | **REDACTED VERSION** |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) | Civil Action No. 01-1908 (RWR) |
| DYNCORP, et al., | ) ) ) ) | Consolidated with Civil Action No. 07-1042 (RWR) for case management and discovery |
| Defendants. | ) ) ) ) ) ) | purposes |

MEMORANDUM OPINION AND ORDER

Plaintiffs, approximately 2,000 Ecuadorian citizens and domiciliaries, bring common law negligence and other tort claims against the DynCorp defendants, alleging personal injury and property damage caused by the defendants spraying herbicides over the plaintiffs' lands in Ecuador. The defendants have moved for summary judgment, arguing that the plaintiffs have proffered no expert testimony to show the dose and duration of the plaintiffs' exposure to any herbicides or to show that such exposure caused the injury and damage. The plaintiffs counter that expert testimony is unnecessary where, as here, hundreds of eyewitnesses have testified that their exposure to the herbicides caused them to suffer symptoms that are consistent with the herbicide's known effects, and where an expert has corroborated certain of those claims. Because the plaintiffs failed to raise a genuine issue of material fact as to any injury to the plaintiffs' crops,

livestock, and fish, but met their burden regarding general and specific causation as to their personal injuries, summary judgment will be granted in part and denied in part.

## BACKGROUND

The Department of State ("DOS") hired the defendants to help eradicate Colombian cocaine and heroin poppy plantations. Arias v. DynCorp, 856 F. Supp. 2d 46, 49 (D.D.C. 2012). To carry out the mission, which was known as "Plan Colombia," the defendants' planes sprayed aerial fumigants over Colombian drug farms. However, the planes allegedly also unleashed a "fumigant that is harmful to humans, animals, and plants other than cocaine and opium poppies" onto the plaintiffs' lands in Ecuador. Id. (internal quotation marks omitted). These fumigations are alleged to have severely damaged the plaintiffs and their property and, as a result, forced those residing in the affected areas to flee. Id. The plaintiffs now bring common law tort claims and claims under the Alien Tort Claims Act against the defendants, all arising from injuries the fumigants allegedly caused.

The plaintiffs proffer as an expert "Dr. Michael Wolfson, an occupational and environmental health specialist[.]" Pls.' Opp'n to DynCorp's Mot. for Summ. J. Based on the Lack of Necessary Expert Test. ("Pls.' Opp'n") at 11. In his deposition, Wolfson "testified that Plaintiffs['] symptoms were consistent with those

experienced after exposure to Glyphosate-containing herbicides" and that no "precise dose information" was necessary to reach that conclusion.  Id.  He also "testified that to a reasonable degree of medical certainty, Plaintiffs' exposure to the Plan Colombia Glyphosate-containing herbicides ("GBH") sprayed on or near the Plaintiffs' homes and farms . . . caused their symptoms and increased their risk of developing certain cancers and non-Hodgkins Lymphoma."  Id. at 34-35; see also Pls.' Opp'n, Ex. 1, Michael Wolfson Dep. ("Wolfson Dep.") at 90:25, 91:1-6.  However, Wolfson offered no expert opinion as to the specific amounts of herbicide-laden spray that may have drifted into Ecuador as a result of Plan Colombia, or the degree or duration of individual plaintiffs' exposure to such drift.  Wolfson Dep. at 7:22-25, 8:1-6.  Neither did Wolfson opine on the plaintiffs' claims of injury to their crops, animals, and fish.  Defs.' Mot. for Summ. J. Based on the Lack of Expert Test. ("Defs.' Mot.") at 6; see also Wolfson Dep. at 8:12-14, 9:9-12.

The test plaintiffs also have supplied "[eyewitness] accounts of their exposure to the spray and the symptoms they developed immediately or soon after the spraying[.]"  Pls.' Opp'n at 16; see also id. at 34.  For example, within two hours of having observed aerial spraying, Martina Bosquez Garcia and Edgar Balcazar Bravo experienced itching and burning sensations on the skin and in the nose and throat.  Pls.' Opp'n, Ex. 1, Martina

Bosquez Garcia Dep. at 38:3-17; id. at Ex. 1, Edgar Balcazar Bravo Dep. at 42:4-10. All in all, between nine and eleven of the twenty test plaintiffs reported having experienced similar symptoms in the immediate aftermath of spray events. Pls.' Opp'n, Pls.' Stmt. of Material Facts, Pls.' Stmt. of Disputed Material Facts ("Pls.' SDMF") ¶ 4. To bolster these eyewitness accounts, the plaintiffs cite studies and evaluations conducted by the Ecuadorian Scientific Commission, ███████████████ and Dr. Adolfo Maldonado, which reflect that the ecological "impacts on [Ecuadorian] properties[] . . . [were] consistent with" the farmer's complaints, and that the vast majority of those residing in the affected areas were poisoned as a result of the spraying. Pls.' SDMF ¶ 9; Pls.' Opp'n at 35.

The DynCorp defendants' experts counter that the amount and type of herbicide drift to which the plaintiffs were exposed did not cause the alleged damage. Dr. Andrew Hewitt, an expert in the drift of aerial herbicides, concluded that "there . . . could not have been any meaningful drift of Plan Colombia herbicide onto the farms of any of the . . . test plaintiffs[.]"[1] Defs.' Mot. at 10; Defs.' Mot., Defs.' App. ("Defs.' App.") (Andrew Hewitt Rpt. ("Hewitt Rpt.")) at 198. Dr. Robert I. Krieger,

---

[1] The plaintiffs "dispute the Hewitt report because its conclusions . . . are based on a controlled study . . . [which] cannot be considered conclusive because of the variability of several factors including the height at which spray is released and the amount of spray released[.]" Pls.' SDMF ¶ 2.

based upon his "background, training and experience in environmental, human and animal toxicology; risk characterization; and risk assessment" concluded that "[t]here is no scientific basis to conclude that the test plaintiffs' alleged injuries . . . and injuries to their livestock could have been caused by exposure to the Plan Colombia spray mixture." Defs.' App. (Robert I. Krieger Rpt. ("Krieger Rpt.")) at 210.

Accordingly, the defendants have moved for summary judgment based upon the plaintiffs' lack of expert testimony. The defendants argue that such testimony is necessary for two reasons. First, "the test plaintiffs' legal claims turn[] on medical and scientific knowledge that is beyond the ken of the average layman[.]" Defs.' Mot. at 1. Second, they argue that the plaintiffs can demonstrate causation -- an essential element of their claims in tort -- only by proffering expert evidence of the specific dose of herbicide drift to which plaintiffs were exposed for a duration sufficient to cause harm to them and their property. Defs.' Mot. at 19.

The plaintiffs oppose. They assert, among other things, that expert testimony demonstrating a dose-response relationship is not required to show that they were exposed to the Plan Colombia herbicide, Pls.' Opp'n at 5, that expert testimony is not required to show that the Plan Colombia herbicide caused injury to the plaintiffs' animals, fish, and crops, id. at 18,

that the aggregated eyewitness accounts of close temporal proximity between spraying events and subsequent damage obviate any need for expert evidence, id. at 15, and that in any event, Wolfson testified to a reasonable certainty that the plaintiffs' exposure to herbicides damaged them, id. at 11-12.

## DISCUSSION

"[T]he central purpose of the summary judgment device[] . . . is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). Summary judgment is proper "when the pleadings and evidence show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Akers v. Beal Bank, 845 F. Supp. 2d 238, 240 (D.D.C. 2012) (quoting Fed. R. Civ. P. 56(a)). A dispute is "genuine" if a reasonable jury, given the evidence presented, "could return a verdict for the nonmoving party." Musick v. Salazar, 839 F. Supp. 2d 86, 93 (D.D.C. 2012). "'A fact is material if a dispute over it might affect the outcome of a suit under the governing law.'" Id. (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)).

"'To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim.'" Etheridge v. FedChoice Fed. Credit

Union, 789 F. Supp. 2d 27, 32 (D.D.C. 2011) (quoting Arrington v. United States, 473 F.3d 329, 335 (D.C. Cir. 2006)); accord Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). Neither a "'[mere] scintilla of evidence[,]" Estate of Parsons v. Palestinian Auth., 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)), nor "'some metaphysical doubt as to the material facts[,]'" will suffice to defeat summary judgment. Harris v. Koenig, 815 F. Supp. 2d 26, 30 (D.D.C. 2011) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Instead, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

In considering a summary judgment motion, a court may not make credibility determinations, weigh evidence, or "draw[] . . . legitimate inferences from the facts[.]" Estate of Parsons, 651 F.3d at 123 (quoting Anderson, 477 U.S. at 255). Those functions are reserved for the jury. Id. Rather, a court accepts as true the nonmovant's evidence and draws "justifiable inferences . . . in his favor." Anderson, 477 U.S. at 255. "If the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its

significance, summary judgment is improper." Etheridge, 789 F. Supp. 2d at 32 (internal quotation marks and alternations omitted). "[I]f undisputed facts point unerringly to a single, inevitable conclusion, [however,] summary judgment [is] warranted." Keefe Co. v. Americable Int'l, 169 F.3d 34, 38 (D.C. Cir. 1999) (internal quotation marks and alternations omitted).

To prevail in a negligence action under District of Columbia law, the plaintiff must show: "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 793 (D.C. 2011). To prove causation in a toxic tort case, the plaintiff must show general and specific causation. Young v. Burton, 567 F. Supp. 2d 121, 138 (D.D.C. 2008). That is, "the plaintiff must show that the toxicant in question is capable of causing the injury complained of (general causation) and must further prove that the toxicant in fact did cause that injury in the present case (specific causation)." Young, 567 F. Supp. 2d at 138 (internal quotations marks and alterations omitted); see also Reyes v. Keith Mach. Corp., Civ. No. 09-5309(DRD), 2011 WL 2413666, at *3 n.1 (D.N.J. June 8, 2011) ("Absent 'proof of cause, there is no connection between the injury complained of and the fault of anyone.'") (quoting J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability and Litigation, § 4.01 at 127 (rev. ed. 2000)). The

plaintiff must first meet her burden to prove general causation. Only then can the plaintiff offer evidence concerning specific causation. Raynor v. Merrell Pharm., 104 F.3d 1371, 1376 (D.C. Cir. 1997).

In some cases, District of Columbia law requires plaintiffs to establish causation in tort cases through expert testimony. Hull v. Eaton Corp., 825 F.2d 448, 455 (D.C. Cir. 1987) (collecting cases); Davis v. Bud & Papa, Inc., Civil Action No. 11-1001 (RC), 2012 WL 3195154, at *3 (D.D.C. Aug. 8, 2012). "The purpose of expert opinion testimony is to avoid jury findings based on mere speculation or conjecture." Washington v. Wash. Hosp. Ctr., 579 A.2d 177, 181 (D.C. 1990). Expert testimony is required when "the subject presented is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." Hull, 825 F.2d at 455 (internal quotation marks and citation omitted); accord Lasley v. Georgetown Univ., 688 A.2d 1381, 1385 (D.C. 1997) ("To allow a jury of laymen, unskilled in medical science, to attempt to [determine causation without medical opinion testimony in a medically complicated case] would permit the rankest kind of guesswork, speculation and conjecture."). Expert testimony is not required if the question is not a "complex" one such that the jury can determine causation without the aid of expert testimony based on their own common sense and general experience. Williams

v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses & Missionaries, 924 A.2d 1000, 1003-04 (D.C. 2007); Int'l Sec. Corp. of Va. v. McQueen, 497 A.2d 1076, 1080 (D.C. 1985) ("In the absence of 'complicated medical questions,' the plaintiff's own testimony, without need for supporting expert medical testimony, will suffice to prove causation of injury." (quoting Jones v. Miller, 290 A.2d 587, 590 (D.C. 1972)); see also Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962). Courts must apply these legal principles to determine whether expert testimony is required on a case-by-case basis. Davis, 2012 WL 3195154, at *3.

I.    GENERAL CAUSATION

The DynCorp defendants allege that general causation "turns on medical and scientific knowledge that is beyond the ken of the average layman[.]" Defs.' Mot. at 1. Certainly, whether a toxin can cause the kinds of injuries the plaintiffs allege is a question "distinctly related to some science" that requires expert testimony. See generally David H. Kaye, David E. Bernstein & Jennifer L. Mnookin, The New Wigmore: Expert Evidence § 2.5 (2d ed. 2010); see also Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004).

The defendants do not dispute that the plaintiffs have met their burden in providing expert testimony on general causation for the plaintiff's personal injuries. The defendants do argue that they are entitled to summary judgment as to the plaintiff's

claims for damages for injury to their crop, livestock, and fish. The defendants' experts concluded that no "changing levels of vegetation . . . in the immediate area of -- and in the weeks immediately following -- the September and October 2002 Plan Colombia spraying operations[]" took place, Defs.' App. (Barry Evans Rpt.) at 201, and that no "scientific basis [supported the conclusion] that the test plaintiffs' alleged injuries to their livestock could have been caused by exposure to the Plan Colombia spray mixture[,]" Krieger Rpt. at 210. Dr. Wolfson offered no expert opinion on the plaintiffs' claims of injury to their crops, livestock, and fish. Pls.' SDMF ¶¶ 25, 37. Because the plaintiffs agreed that their sole expert witness would not be offering any opinions regarding the plaintiffs' claims of injury to their farm animals, fish, or crops, plaintiffs failed to meet their burden to offer expert testimony to prove general causation as to these injuries. Accordingly, the defendants' motion for summary judgment will be granted as to the plaintiffs' damages claims for injury to their crops, farm animals, and fish.

II. SPECIFIC CAUSATION

The defendants contend that they should also be granted summary judgment with respect to the plaintiffs' personal injuries experienced immediately after exposure to the Plan Colombia herbicide ("acute injuries") and plaintiffs' increased risk of developing cancer ("chronic injuries") because the

plaintiffs did not proffer any expert testimony that they "were exposed to injurious levels of the [Plan Colombia] herbicide[.]" Defs.' Mot. at 16. Stated simply, the defendants argue that the plaintiffs did not raise a triable issue of fact as to specific causation. The premises of their argument are that (1) the plaintiffs cannot establish specific causation without proffering expert testimony, (2) that the plaintiffs' proffered expert must opine as to the plaintiffs' level of exposure to the Plan Colombia herbicide, and (3) that the plaintiffs' expert did not provide such testimony. Although Dr. Wolfson testified generally as to the concentration of the glyphosate in the Plan Colombia herbicide, he did not offer any opinion as to the plaintiffs' dose or duration of exposure. Pls.' SDMF ¶ 16. Thus, the question is whether specific causation in this case can be established without expert testimony on the plaintiffs' level of exposure to the toxin.

In toxic tort cases, specific causation is usually established by an expert presenting "scientifically-accepted information about the dose-response curve for the toxin which confirms that the toxin can cause the health effects experienced by the plaintiff at the dosage plaintiff was exposed to." Young, 567 F. Supp. 2d at 128. A dose-response relationship is "'[a] relationship in which a change in amount, intensity, or duration of exposure to an agent is associated with a change -- either an

increase or decrease -- in risk of disease.'" McCallum ex rel. McCallum v. United States, No. Civ.A. 304CV442, 2005 WL 1048735, at *10 (E.D. Va. May 4, 2005) (quoting Fed. Judicial Ctr., Reference Manual on Scientific Evidence 390 (1994)). When a plaintiff seeks to establish specific causation through a dose-response relationship, "'[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.'" Young, 567 F. Supp. 2d at 128-29 (quoting Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999) (quoting Wright v. Willamette Indus., Inc., 91 F.3d 1105, 1106 (8th Cir. 1996))).

In certain circumstances, however, a plaintiff may also meet his burden to prove specific causation in a toxic tort case by offering lay witness testimony showing "a temporal relationship between exposure to a toxin and subsequent adverse health effects." Young, 567 F. Supp. 2d at 128. A temporal relationship is sufficient to establish causation only where "the circumstances of the exposure and the timing of the illness [are] so compelling as to render further evidence of causation unnecessary[.]" Id. at 128.[2]

---

[2] Cf. Moore v. Ashland Chem. Inc., 151 F.3d 269, 278 (5th Cir. 1998) ("In the absence of an established scientific connection between exposure and illness, or compelling circumstances . . . , the temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation.").

A.  Acute injuries

Specific causation of plaintiffs' acute injuries may be established through expert testimony or through lay testimony establishing a temporal relationship between exposure to the toxin and the acute injury.  Temporal evidence without expert testimony may be sufficient to prove specific causation for acute injuries where the symptoms from exposure to the toxin were experienced immediately, or nearly so.  See McCallum, 2005 WL 1048735, at *11-12 (holding that evidence that symptoms known to be associated with toxin poisoning exhibited three days after exposure and eyewitness testimony that the plaintiff was exposed to the toxin created a genuine issue of triable fact).  In G.C. ex rel. Johnson v. Wyndham Hotels & Resorts, LLC, 829 F. Supp. 2d 609 (M.D. Tenn. 2011), the plaintiff's two-year-old daughter ingested ant poison found in a resort guest room, and the plaintiff brought suit for damages alleging that the defendants' negligence caused the ingestion.  The plaintiff did not provide expert testimony regarding causation.  Instead, she relied on her own testimony that "soon after consuming the pesticide, [her daughter] experienced breathing difficulties, stomach pain, and a rash."  Id. at 612.  Based on this testimony, the court concluded that the plaintiffs had offered sufficient evidence of causation to avoid summary judgment.  Id. at 612-13.  As the Sixth Circuit explains, where symptoms are experienced shortly after exposure

to a toxin, "[i]t does not take an expert to conclude that, under these circumstances, Defendants more likely than not are responsible for Plaintiffs' injuries." Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 433 (6th Cir. 2009) (symptoms appeared within 15 minutes of exposure). Similarly, another court held that expert testimony was not required where "several individuals simultaneously become ill immediately upon exposure to strong noxious fumes, suffering dizziness, nausea, breathing difficulty, irritated eyes, and diarrhea." Wade v. Plantation Pipe Line Co., No. 2:05-CV-697-WKW, 2007 WL 1668815, at *3 (M.D. Ala. June 8, 2007). The court noted that although "[a]t some point, the causation between exposure to [the toxin] and a medical condition would be beyond the knowledge of an untrained person to deduce . . . , the immediacy of the reaction that these plaintiffs experienced and the fact that they all had similar reactions is sufficient to show causation." Id.

Here, the test plaintiffs offer lay witness testimony that shortly after the spraying, the witnesses developed symptoms. It is not beyond the jury's common sense to infer that the plaintiffs' acute injuries that occurred within hours of their alleged exposure to the Plan Colombia spray was caused by the spray.

The defendants also argue that because the plaintiffs' testimony is "contrary to a solid wall of objective data showing

that they were not in fact exposed to herbicide from any of the aerial eradication operations[,]" the plaintiffs' exposure testimony is insufficient to overcome a motion for summary judgment. Defs.' Mot. at 22. "Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible." Johnson v. Wash. Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989), abrogated in part by Belton v. Wash. Metro. Area Transit Auth., 20 F.3d 1197 (D.C. Cir. 1994). The D.C. Circuit explains that judges are most likely to remove a factual question from the jury "when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury." Id. Here, the plaintiffs' testimony is disputed but the defendants do not argue that the existence of contrary evidence makes the plaintiffs' accounts incredible, that it is physically impossible that the plaintiffs were exposed to the Plan Colombia herbicide, or that the plaintiffs are lying. Thus, the plaintiffs' eyewitness testimony is sufficient to create a triable issue of material fact concerning what caused their acute injuries.

B.    <u>Chronic injuries</u>

However, expert testimony on specific causation is required to create a triable issue of material fact about whether the Plan Colombia herbicide caused plaintiffs' alleged chronic injuries. Because the nexus between the plaintiffs' exposure and their increased risk of cancer would not be obvious to the jury, expert evidence is required to explain the underlying medical science and avoid jury guesswork or speculation as to the issue of causation.  See <u>Wills</u>, 379 F.3d at 46 ("As we have noted, the causal link between exposure to toxins and other behavior and [cancer] is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation.").  In light of the need for expert testimony on specific causation of chronic injuries, lay witness testimony establishing a temporal relationship is insufficient to meet the plaintiff's burden. <u>Johnson v. Arkema, Inc.</u>, 685 F.3d 452 (5th Cir. 2012) is illustrative.  There, the plaintiff alleged that he suffered acute and chronic personal injuries from exposure to a chemical. The plaintiff sought to establish causation through testimony that there was a strong temporal connection between his exposure to the chemical and the onset of his symptoms.  The Fifth Circuit held that since the plaintiff's acute injuries "are within those limited circumstances where expert opinion is unnecessary[,]" the district court erred in granting summary judgment to the

defendant regarding plaintiff's acute injuries. Id. at 471. However, the court of appeals agreed with the district court that the temporal relationship was insufficient to establish specific causation for the plaintiff's chronic injuries because those injuries developed years following the incidents. Id.; see also Cavallo v. Star Enter., 892 F. Supp. 756, 774 & n.46 (E.D. Va. 1995) (finding that temporal evidence is insufficient to prove that exposure to a toxin caused certain chronic injuries), aff'd in relevant part, rev'd in part, 100 F.3d 1150 (4th Cir. 1996).

The defendants move for summary judgment arguing that the plaintiffs "fail[ed] to proffer *any* expert testimony on other necessary elements of their causation claims." Defs.' Mot. at 5 n.5 (emphasis in original). If the argument is a reflection on causation of chronic injuries, however, Dr. Wolfson states in his expert report that "[t]he exposure of the plaintiffs to [the Plan Colombia herbicide], as a result of aerial spraying, very likely places them at a significant increased risk for the development of cancers in the future." Pls.' Opp'n, Ex. 8, Michael Wolfson Rpt. at 3. This *is* some expert evidence regarding causation of chronic injuries, even though Dr. Wolfson said in his deposition that he is offering no opinion on the dose or duration of the plaintiffs' exposure to the toxin. Wolfson Dep. 100:7-10; Pls.' SDMF ¶ 15. Because the plaintiffs have proffered some expert testimony on specific causation to support their claims that the

Plan Colombia herbicide has increased their risk for cancer, the motion for summary judgment will be denied as to this issue.[3]

## CONCLUSION AND ORDER

The plaintiffs have not proffered expert evidence as to general causation for injury to their fish, crops, and livestock. As to the plaintiffs' personal injuries, the plaintiffs' expert testimony on general causation is sufficient to survive summary judgment. Contrary to defendants' claim, the plaintiffs have offered expert testimony regarding the cause of plaintiffs' chronic injuries, and the plaintiffs' percipient witness testimony creates a triable issue of material fact as to specific causation of plaintiffs' acute injuries. Accordingly, it is hereby

ORDERED that the defendants' motion [256] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART. Judgment is entered for the defendants as to plaintiffs' claims for damages for injury to their crops, livestock, and fish. Defendants' motion is denied as to plaintiffs' personal injuries. It is further

---

[3] Defendants have voiced serious doubts as to whether Dr. Wolfson's causation opinion regarding chronic injuries, without testimony on the dose-response relationship, is reliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). However, the defendants note that the instant motion is not meant to attack the admissibility of Dr. Wolfson's proffered expert opinions. Defs.' Mot. at 5 n.5. As such, Dr. Wolfson's qualifications and the reliability and relevance of his expert opinions are not at issue in this motion.

ORDERED that the parties confer and file under seal by February 28, 2013 a proposed redacted version of this memorandum opinion and order that can be filed on the public docket.

SIGNED this 6th day of February, 2013.

_____
RICHARD W. ROBERTS
United States District Judge